Edward F. WROBLEWSKI, an individual, Plaintiff,

v.

Peter V. BRUCHER; Arthur W. Morford; Joseph K. Morford, II; Robert E. Lund; LER, Inc., a corporation; AWM, Inc., a corporation; PVB, Inc., a corporation; Scott-Kinnear, Inc., a corporation; OFT Exploration, Inc., a corporation; Petroleum Accounting Systems and Services, Inc., a corporation; Exploration Associates, a limited partnership; Exploration Drilling, a limited partnership; Putnam Ventures, Ltd., a limited partnership; and G.P. Exploration, a partnership, Defendants.

No. CIV–81–774–D.

United States District Court, W.D. Oklahoma.

March 10, 1982.

Thomas T. Rogers, Neal A. Gerstandt, and James H. Lockhart, Oklahoma City, Okl., for plaintiff.

Stephen P. Friot, Oklahoma City, Okl., for defendants.

## ORDER

DAUGHERTY, District Judge.

The Plaintiff, an Oklahoma citizen, brought the instant action alleging, *inter alia,* fraud and collusion by a general partner in the conversion of the assets of a limited partnership. The Plaintiff alleges that he is one of several limited partners in Exploration Associates, a limited partnership organized under the laws of the State of California and that Joseph K. Morford, II, an individual, a citizen of the State of California, is the sole general partner of Exploration Associates. The Plaintiff joined as party Defendants Joseph K. Morford, II, Exploration Associates, and other individuals, corporations, and limited partnerships. No Defendant is a citizen of Oklahoma. It is asserted that this Court has subject matter jurisdiction of this action by reason of diversity of citizenship and amount in controversy pursuant to 28 U.S.C. § 1332.

The Plaintiff seeks damages herein for the Defendant general partner's alleged breach of his fiduciary duty to manage the assets of the limited partnership for the benefit of the limited partnership and to give a true account therefor. The Plaintiff alleges that the general partner and others fraudulently colluded to defraud the Plaintiff and to convert the assets of the limited partnership to their own use.

The Defendants have filed herein a Motion to Dismiss this case on the basis that complete diversity between the Plaintiff and all of the Defendants is lacking. The Motion is supported by Briefs, and the Plaintiff has filed a Brief in opposition to said Motion.

In support of their Motion, the Defendants have submitted affidavits, not contested by the Plaintiff, showing that the Plaintiff is a limited partner of the Defendant limited partnership, Exploration Associates, which is in turn the sole general partner of Exploration Drilling and Putnam Ventures, Ltd., Defendant, both of which are California limited partnerships. The Defendants contend that the citizenship of each of the

limited partners must be considered in determining the citizenship of a limited partnership for diversity purposes and that, therefore, as the Plaintiff is a limited partner of Exploration Associates and is not diverse from himself, the Plaintiff is not diverse from any of the limited partnerships.

Organizations and groups of individuals have generally been categorized for diversity purposes as either corporations, trusts and other represented entities, unincorporated associations and partnerships, general and limited. The Court of Appeals for the Tenth Circuit has held that where the Plaintiff sues an unincorporated association of which he is a member, complete diversity is lacking because the Plaintiff is not diverse from himself. *Jett v. Phillips & Associates,* 439 F.2d 987 (Tenth Cir.1971). In that case, Phillips & Associates is described as an "enterprise" and an "unincorporated association." If that case applies to limited partnerships of the type involved herein, and if the citizenship of the limited partners of a limited partnership must be counted for diversity purposes, complete diversity does not exist and this Court has no jurisdiction in the instant action.

This Court has previously held that for the purposes of diversity jurisdiction, a limited partnership is a citizen of each State of which a general partner is a citizen. *Rocket Oil & Gas Co. v. Arkla Exploration Co.,* 435 F.Supp. 1303 (W.D.Okl.1977), relying on *Colonial Realty Corporation v. Bache & Co.,* 358 F.2d 178 (Second Cir.1966) (Friendly, J.) *cert. denied,* 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966), which continues to be followed in the Second Circuit, *Lewis v. Odell,* 503 F.2d 445 (Second Cir.1974); *Boise Cascade Corp. v. Wheeler,* 419 F.Supp. 98 (S.D.N.Y.1976), *affirmed,* 556 F.2d 554. The only other circuit in which a Court of Appeals has ruled on this issue is the Third Circuit, which took the opposite view in *Carlsberg Resources Corp. v. Cambria Savings & Loan Assn.,* 554 F.2d 1254 (Third Cir.1977), which has been followed only in the Third Circuit,[1] except for the case of *Grynberg v. B.B.L. Associates,* 436 F.Supp. 564 (D.Colo.1977) in this Circuit. Where district courts in other circuits have considered the question, they have agreed with the decision in *Colonial Realty Corporation, supra. Williams v. Sheraton Inns, Inc.,* 514 F.Supp. 22 (E.D.Tenn., N.D.1980); *C.P. Robinson Const. Co. v. National Corp. for Housing Partnerships,* 375 F.Supp. 446 (M.D.N.C.1974); and the Court of Appeals for the Fifth Circuit, in *dictum,* has expressed strong approval of it, *Lee v. Navarro Sav. Assn.,* 597 F.2d 421 (Fifth Cir.1979), *affirmed, sub nom. Navarro Sav. Assn. v. Lee,* 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed. 425 (1980).

However, in affirming the *Lee* case, the Supreme Court held only that the citizenship of a Massachusetts business trust suing in the names of its trustees should be determined by reference to the citizenship of the trustees only and not also the beneficiary shareholders, so long as the trustees were real and substantial parties to the controversy. The Fifth Circuit had reasoned, from *Colonial Realty Corporation, supra,* that the trustees, like general partners in a limited partnership, had general control and liability and therefore were the only real parties in interest under Rule 17(a), Federal Rules of Civil Procedure, and the only proper parties to suits involving the trust. Therefore, the Fifth Circuit concluded, only the citizenship of the trustees was relevant to diversity jurisdiction. The Supreme Court, while reaching the same result, rejected the "real party in interest" approach[2] in favor of the similar but slightly

---

1. It was followed only reluctantly in *Limbach Co. v. Renaissance Center Partnership,* 457 F.Supp. 347 (D.Pa.1978). However, the Third Circuit followed it in *Trent Realty Association v. First Fed. Ass'n,* 657 F.2d 29 (Third Cir. 1981), rejecting the application of the principles followed herein under *Navarro Sav. Assn. v. Lee, infra.*

2. It has been asserted in law review commentary that the "real party in interest" has been used in the past by the Supreme Court and should be used here, Comment, *"Carlsberg Resources v. Cambria Savings and Loan Ass'n: Limited Partners and Diversity Jurisdiction,"* 13 Tulsa L.Jour. 304, at 320 (1977).

more limited test of whether the named party is a "real party to the controversy." It reasoned only that the trustees "have legal title; they manage the assets; they control the litigation. In short, they are real parties to the controversy." 446 U.S. at 465, 100 S.Ct. at 1784.

The dissent in *Navarro Sav. Assn.,* following the reasoning of the Court of Appeals but reaching the opposite result, argued that the beneficial shareholders in the trust involved therein had such substantial control over the actions of the trustees that, under the law of Massachusetts, that particular trust should be considered a (general) partnership rather than an express trust.[3] This analysis seemed to the majority to invite too much threshold litigation over the issue of jurisdiction in a diversity case involving a business trust.[4]

■ No party in the instant case has questioned the propriety of naming a limited partnership as a party to the suit. As discussed *infra,* the limited partnership is a proper party and a real party in interest. But the test of jurisdiction is not merely who is named as a party. The statute provides for jurisdiction of civil actions where "the matter in controversy ... is between—(1) citizens of different States ...." As a limited partnership is not a natural individual who would obviously be capable of having citizenship, the question is whether it should be considered to have an artificial "citizenship" as an entity, like a corporation, or the multiple citizenship of all or some subgroup of its members. The Court concludes that it cannot treat a limited partnership as a corporation, although

there are good reasons for doing so. Of the alternatives, the Court concludes that the general partners are real parties to the matter in controversy but the limited partners are not. The limited partners are not here, and cannot ordinarily be, parties to an action in which they represent or act on behalf of the limited partnership. But if it is nevertheless assumed that they are parties herein because the partnership is a party, the Court may apply the same standards used by the Supreme Court in *Navarro Sav. Assn. v. Lee, supra,* in determining whether they are real parties to the controversy.

As the limited partnerships involved herein are solely creatures of state law, we must look to the law of the state of their creation in order to determine their features before applying federal jurisdictional rules to them. They were created under the California version of the Uniform Limited Partnership Act, California Corporation Code §§ 15501, *et seq.,* a uniform State law which has been enacted in nearly all the States of the Union without significant changes. Under the uniform act, a "limited partner" in no sense either (1) holds title to assets of the limited partnership, (2) manages those assets, or (3) controls litigation to which the limited partnership is a party.

### (1) TITLE TO ASSETS

In *Evans v. Galardi,* 16 Cal.3d 300, 128 Cal.Rptr. 25, 546 P.2d 313 (1976), the California Supreme Court held that assets of a California limited partnership were not available to satisfy a judgment against the two limited partners. Even though the limited partners were the sole owners of the corporate general partner, the court held that "the limited partner is given no prop-

---

**3.** It is to be noted that the elements of control mentioned by the dissent, *id.,* 446 U.S. at 469, 100 S.Ct. at 1786, gave more control to the beneficial shareholders there than the statutes and partnership agreement give the limited partners in the instant case. Because of this fact and the fact that the test used by the court in *Colonial Realty Corp.* and the cases following it is essentially the same "real party in interest" test applied by the dissent, it would appear that, by mentioning "partnerships," the dissent means a partnership, such as a general partnership, without a class of members who have no control.

**4.** The Court quotes Professor Currie's epigram regarding the necessity of simplicity in jurisdictional rules:

"'Jurisdiction should be as self-regulated as breathing; ... litigation over whether the case is in the right court is essentially a waste of time and resources.' Currie, The Federal Courts and the American Law Institute, Part I, 36 U. of Chi.L.Rev. 1 (1968)." Cited at 446 U.S. 464, n. 13.

erty interest in the specific partnership assets as such." 16 Cal.3d at 306, 128 Cal. Rptr. at 30, 546 P.2d at 318. The Court then observed that the only property interests of a limited partner in the partnership are rights to a share of income, Cal.Corp. Code § 15515, and return of his contributions of capital, § 15516. This, said the Court, is "in sharp contrast" to the rights of general partners, which, under § 15509, include all of the rights and powers enjoyed by (general) partners in non-limited partnerships under the Uniform Partnership Act, Cal.Corp.Code §§ 15001, et seq. This statute gives a general partner the rights of a co-owner or "tenant in partnership" in specific partnership property, § 15025, which includes "an equal right with his partners to possess specific partnership property for partnership purposes," § 15025(2)(a). The general partner's interest in specific partnership property is in addition to his interest in his share of profits and surplus, § 15026.

Further, under the Uniform Partnership Act, title to real property of a non-limited partnership may be held in the name of one or more of the (general) partners, as well as in the name of the partnership. Cal.Corp. Code §§ 15008, 15010. But a limited partner's holding title to partnership assets would be inconsistent with his status as a limited partner and would subject him to being held liable as a general partner under Cal.Corp.Code § 15507.[5]

■ In *Evans*, the Plaintiff did not dispute that the legal title to the assets upon which execution was sought was vested in the limited partnership and not in the limited partners, 16 Cal.3d at 302, 128 Cal.Rptr. at 28, 546 P.2d 316. Rather, asserted the Plaintiff, since the Defendants in their capacities as limited partners were each entitled to half of the net profits of the partnership, their interests extended to a direct equitable interest in specific partnership assets, without regard to the partnership entity. In rejecting this argument, the California court observed:

"Plaintiff does not claim and certainly did not establish at the hearing before the trial court, that there is any basis for finding that El Dorado is not, in fact, a bona fide limited partnership or that defendants' relationship with the firm indicates that they should be treated as general partners. Nor does he allege that defendants used this form of business to defraud plaintiff or anyone else or that they treated the business assets as their own." 16 Cal.3d at 310, 128 Cal.Rptr. at 32, 546 P.2d at 320.

Clearly, a limited partner can claim no interest or right in the assets, properties, or rights of the partnership.[6] Likewise, he can have no interest in defending the partnership's rights.

### (2) MANAGEMENT

Paragraph 6.1 of the "Amended Limited Partnership Agreement of Exploration Associates," as pleaded by the Plaintiff, gives the general partner "full, exclusive and complete authority in the management and control of the business of the Limited Partnership . . . ." This authority expressly in-

---

**5.** The Uniform Limited Partnership Act, § 5, Cal.Corp.Code § 15505, prohibits the use of the limited partner's name in the name of the partnership, which would suggest to a potential creditor of the limited partnership that a limited partner is liable as a general partner.

**6.** The California Court in *Evans, supra,* refused to apply the reasoning in *Donroy, Ltd. v. United States,* 301 F.2d 200 (Ninth Cir.1962), which is relied on herein by the Defendants as expressive of California law. The Court observed:

We are aware that the decision . . . in *Donroy, Ltd.* . . . . contains language supportive of a contrary position. In holding that a Canadian corporation, which was a limited partner in a California limited partnership, had a "permanent establishment" in the United States for purposes of a tax convention with Canada, the court stated that "each partner, whether general or limited has an interest as such in the assets and profits of the partnership, including the physical plant or office at which the partnership conducts its business . . . ." (*Id.* at p. 207.) However, the court's finding of such an interest for purposes of a tax convention is not persuasive authority in regard to the question at bar.

16 Cal.3d at 308, 128 Cal.Rptr. at 31–32, n. 11, 546 P.2d at 319.

cludes the acquisition, operation, hypothecation, and sale of partnership assets in the ordinary course of business. Further, Paragraph 7.3 states that the limited partners have no power to manage, transact business for, or bind the partnership. These provisions merely spell out the intent of the Uniform Limited Partnership Act, Cal.Corp. Code §§ 15501, 15507, under which a person identified as a limited partner, who acts only in his capacity as such, is not liable for the obligations of the partnership, as is a general partner, unless he takes part in the control of the business. See *Western Camps v. Riverway Ranch Enterp.,* 70 Cal. App.3d 714, 138 Cal.Rptr. 918 (1977).

▇ Though a general partner has general agency authority to bind partnership assets and other general partners, Cal.Corp. Code §§ 15009, 15509, he cannot bind limited partners, §§ 15501, 15507. Contrary to the reasoning of the court in *Donroy, Ltd., supra,* he is not in any sense a general agent for the limited partners. The Commissioners on Uniform State Laws have commented in regard to the Uniform Limited Partnership Act:

> First, in the draft the person who contributes the capital, though in accordance with custom called a limited partner, is not in any sense a partner. He is, however, a member of the association (see Sec. 1.).
>
> \* \* \* \* \* \*
>
> Third: The limited partner not being in any sense a principal in the business, . . . .
>
> Fourth: The limited partner, while not as such in any sense a partner, may become a partner . . . .
>
> \* \* \* \* \* \*
>
> Seventh: As limited partners are not principals in transactions of the partnership, their liability, . . . is to the partnership, not to the creditors of the partnership (Sec. 17.)[7]

▇ Of course, the reason why a limited partner is not held liable as a principal for the acts of the general partners is that, by virtue of his status, he cannot control them. Further, it appears to be settled in California that one of the essential elements of a true partnership is that the partner has some control and management over the enterprise. *Greene v. Brooks,* 45 Cal.Rptr. 99, at 102, 235 Cal.App.2d 161 (1965); *Spier v. Lang,* 4 Cal.2d 711, 53 P.2d 138 (1935). Thus, a limited partnership such as the one involved herein, which has only one general partner, is not a true partnership under California law, and the label "partnership" is less descriptive of its legal relations than "sole proprietorship" would be.

### (3) CONTROL OF LITIGATION

The limited partnership agreement of Exploration Associates, ¶ 8.1, provides:

> 8.1 The General Partner shall arrange to prosecute, defend, settle or compromise actions at law or in equity at the expense of the Limited Partnership as such may be necessary to enforce or protect Limited Partnership interests.

This, together with the provisions for exclusive management by the general partner discussed above, give the general partner exclusive control over the litigation.

▇ But, again, the contract provisions merely fulfill the intent of the statute. The Uniform Limited Partnership Act, § 26, Cal.Corp.Code § 15526, provides:

> A contributor [i.e., a limited partner], unless he is a general partner, is not a proper party to proceedings by or against the partnership, except where the object is to enforce a limited partner's right against or liability to the partnership.

Relying in part on this provision and, in part, on a statute providing that "[a]ny partnership or other unincorporated association . . . may sue and be sued in the name which it has assumed or by which it is known," Cal.Code Civ.Proc. § 388(a), the California court concluded that

---

**7.** The National Conference of Commissioners on Uniform State Laws, 6 Uniform Laws Anno- tated 564–565.

"a limited partnership is viewed as an entity separate and apart from the limited partners for purposes of suing and being sued."

*Evans v. Galardi, supra,* 16 Cal.3d at 311, 128 Cal.Rptr. at 34, 546 P.2d at 322. Clearly, a limited partner may not join litigation on behalf of partnership interests. He may not represent the interests of the partnership nor his own interest in the partnership's interests. He may only represent himself against the partnership. This is in contrast to the rights of general partners and the members of ordinary unincorporated associations.

 Thus, applying the "real party in interest" analysis of the United States Supreme Court in *Navarro Sav. Assn. v. Lee, supra,* the Court concludes (1) that the title to assets of the limited partnership may be in the name of the partnership entity or, in the case of real property, may be either in the name of the entity or in the name of one or more general partners but cannot be, in any case, in the name of a limited partner; (2) that the general partner, particularly in this case but also generally under the uniform act, has exclusive management of the assets, free of control by the limited partners to a greater extent than the trustees of the business trust in *Navarro Sav. Assn.* were free from control by the benefi-

ciary shareholders; and (3) the general partner ordinarily controls litigation on behalf of the limited partnership and the limited partner may not intervene on its behalf. For purposes of creating and enforcing rights and liabilities of the partnership, the partnership is an entity separate from the limited partners, and the interests of the limited partners are required by statute to be represented by the general partners. Therefore, not only are the limited partnership entity and the general partner(s) the only proper parties on the side of a limited partnership created under the Uniform Limited Partnership Act in a suit by or against the limited partnership, but they are also the only real parties to the controversy. The limited partner cannot be a party or a real party on the side of the limited partnership.

 The Court is not faced with the question of whether the citizenship of the limited partners counts in a derivative action, or intervention, by a limited partner to enforce a right of the limited partnership against the general partner. As the pleadings stand at this point, though the Plaintiff has pleaded wrongs by the general partner against the partnership, *e.g.,* conversion of partnership assets, he has sought only relief which may be owed to him and not to the partnership.[8]

---

8. It is settled law that a limited partner in a California limited partnership, either by virtue of his right to sue the partnership to enforce his rights against it, Cal.Corp.Code § 15526, or, by analogy to corporate law and the application of general equitable principles, Cal.Corp.Code § 15529, would have a right to intervene or file a derivative suit in the event of fraud or collusion. *Smith v. Bader,* 458 F.Supp. 1184 (S.D.N.Y.1978); *Kobernick v. Shaw,* 70 Cal.App.3d 914, 139 Cal.Rptr. 188 (1977); *Linder v. Vogue, Inv., Inc.,* 239 Cal.App.2d 338, 48 Cal.Rptr. 633 (1966). Where there is fraud or collusion, the "consequential interest" of the limited partner or stockholder becomes, under these cases, a "direct interest" entitling the limited partner to sue or defend.

Like the corporation in the case of a stockholder's derivative suit, the limited partnership itself has been held to be an indispensable party under Rule 19, F.R.Civ.P., *Smith v. Bader, supra* (California limited partnership). Hence, a derivative suit would always raise the question of whether the nonparty limited partners

should be considered parties to the suit, for diversity purposes, by reason of their right to intervene.

However, the analogous plaintiff in a stockholder's derivative suit is merely a nominal plaintiff; the corporation which he seeks to represent is the real party in interest whose rights are sought to be enforced, *Ross v. Bernhard,* 396 U.S. 531, at 538, 90 S.Ct. 733, at 738, 24 L.Ed.2d 729 (1970); see also, *Koster v. Lumbermens Mutual Co.,* 330 U.S. 518, at 523, 67 S.Ct. 828, at 831, 91 L.Ed. 1067 (1947). There may be hundreds of potential plaintiffs similarly situated, whose interests must be protected under Federal Rules of Civil Procedure, Rule 23.1, which requires adequate representation by the Plaintiff and approval by the court of any dismissal or compromise of the action after notice and opportunity to object are given to the stockholders. But neither these rights nor the actual noticing would change the stockholders' status as nonparties. See, generally, *Papilsky v. Berndt,* 466 F.2d 251 (Second Cir.

Finally, the Court notes that the possibility of treating the limited partnership as an entity like a corporation for diversity purposes seems to be foreclosed by lack of appropriate precedents, even though the Supreme Court has treated a *Sociedad en Comandita,* an entity of the civil law which is the predecessor of the modern American limited partnership,[9] as a juridical person like a corporation for jurisdictional purposes, *Puerto Rico v. Russell & Co.*[10] Although every attribute mentioned by the Court as evidence that the *Sociedad* was consistently regarded as a juridical person[11] would apply to a limited partnership created under the California Uniform Limited Partnership Act, the value of *Puerto Rico v. Russell & Co.* as precedent was practically eliminated by *dictum* in the subsequent case of *United Steelworkers v. R.H. Bouligny, Inc.,*[12] which criticized the Second Circuit's application of the reasoning of *Puerto Rico v. Russell & Co.* to a case involving a New York joint stock company with 20,000 shareholders[13] and distinguished *Puerto Rico v. Russell & Co.* as

1972), *cert. denied,* 409 U.S. 1077, 93 S.Ct. 689, 34 L.Ed.2d 665.

Thus, even if the instant action were to be considered a derivative suit, the Court, applying the reasoning in *Navarro Sav. Assn., supra,* would not "count" the citizenship of the limited partners who are not parties to the action because they are neither parties acting on behalf of the partnership nor real parties in interest. And, obviously, the Plaintiff is not a Defendant representing the interests of the partnership as a Defendant. There is no reason to depart, in the case of a derivative suit, from the simple rule to which the Court adheres with respect to limited partnerships. To do so would invite the threshold litigation condemned by the Supreme Court.

9. The first limited partnership act of any kind in the United States was adopted by New York in 1822. The idea that inspired it was the *Societe en Commandite,* the French version of the civil law entity. See "Official Comments," The National Conference of Commissioners on Uniform State Laws, 6 Uniform Laws Annotated 563, "Limited Partnership Act (1916)."

In Roman law, from which modern civil law systems derive, the *societas,* in the form of the *societas specialis,* was more or less like the common law general partnership. The partners had unlimited liability for each other's acts done pursuant to partnership purposes. A modern translator of Justinian's *Corpus Juris Civilis* says that the *societas* was an entity in law:

"Under the Scotch law, as under the Roman system which in many other respects it closely follows, a partnership is a separate and distinct legal person, and a corporation is a species of partnership." 2 S. Scott, *The Civil Law* (AMS Press, New York, 1973) (translation of *Corpus Juris Civilis*) at 127, fn. 1. As an entity, it was apparently a necessary party under Roman law:

"In order for an action on partnership to be brought, the partnership must intervene in the proceedings, for it is not sufficient for the property to be in common, unless the partnership appears as a party to the suit, for an action can be brought in common even out-

side the partnership, e.g. ..." 4 S. Scott, *op. cit.,* at 341, § 31 (The Digest, bk. 17, tit. 2, § 31).

The law of Louisiana, a state which has never adopted the uniform acts cited herein, apparently still follows the civil law in this area. According to one of its judges, William Wirt Howe, in his *Studies in the Civil Law* (Little, Brown & Co., Boston 1896), at 70, citing *Smith v. McMicken,* 3 La.Annual, 319, 322, a commercial partnership in that state is considered a "corp moral" or moral being distinct from its members.

Interestingly, Judge Howe goes on to quote Jessel, Master of the Rolls, in a case in the English Chancery Division in 1876, regarding English rules of agency of a partner:

You cannot grasp the notion of agency, properly speaking, unless you grasp the notion of the existence of the firm as a separate entity from the existence of the partners,—a notion which was well grasped by the old Roman lawyers, and which was partly understood in the Courts of Equity before it was part of the whole law of the land, as it is now.

*Id.,* at 72. Whether or not the English courts treat any partnership as a juridical being for all purposes, that clearly is not the rule in the United States. However, of course, another of the progeny of the *societas,* the *sociedad anonima* ("S.A.") is considered by our courts to be a corporation and therefore a complete juridical entity.

10. 288 U.S. 476, 53 S.Ct. 447, 77 L.Ed. 903 (1933).

11. *Id.,* 288 U.S. at 481, 53 S.Ct. at 449.

12. 382 U.S. 145, at 151, 86 S.Ct. 272, at 275, 15 L.Ed.2d 217 (1965).

13. *Mason v. American Express Co.,* 334 F.2d 392 at 397 (Second Cir.1964). One commentator believes that *Mason* must be considered overruled, Wright & Miller, *Federal Practice and Procedure,* § 3630. *Cf.* the decision of the

"fitting an exotic creature of the civil law ... into a Federal scheme which knew it not." [14] The Court essentially based its decision in *United Steelworkers* on the necessity and difficulty of fashioning a test for determining of which State a labor union would be deemed a citizen. It held that this task was a legislative function to be addressed to the Congress.

The difficulty encountered by the Supreme Court in *United Steelworkers* is absent in the case of most business entities, including a limited partnership formed under the Uniform Limited Partnership Act. Such partnerships are created under the law of a particular state and have a principal place of business which must be stated in a publicly filed certificate, Cal.Corp.Code § 15502. It would be an easy matter to consider the citizenship of a limited partnership to be the same as that of a corporation for diversity purposes. [15]

Such treatment would not only be consonant with the reasoning in *Puerto Rico v. Russell & Co.,* but also with the reasoning in the case which originally established the citizenship of a corporation for diversity purposes as that of the state of its incorporation, *Marshall v. Baltimore & Ohio R. Co.* [16] Prior to that case, diversity of citizenship of a corporation was properly pleaded if the plaintiff averred that the citizenship of its president and directors was of a different state from the other party to the suit. [17] That rule, which is similar to the rule followed here as to limited partnerships, was changed to a conclusive presumption that "the persons who act as the representatives, curators, or trustees, of the association, stockholders, or *cestui que trusts,* and in such capacity are the real parties to the controversy," are citizens of the state of incorporation. [18] The idea that a control group, not all the stockholders, comprises the real party to a suit or controversy involving a corporation as a nominal party dominates the *Marshall* case. [19] There, the court also compares suits involving a corporation to class actions, in which, the Court says, only the citizenship of the representatives and not that of all members of the class, is considered for diversity purposes. [20]

However, no common law entity other than the corporation has been treated as an entity with the attribute of artificial citizenship for diversity purposes by the Supreme Court. In brief opinions, it has held that a joint stock company could not "be a *citizen* of New York ... unless it be a corporation," (emphasis in original), *Chapman v. Barney,* [21] and that a "limited partnership association" created under statutes of Pennsylvania then existing could not be considered a "citizen" as an entity, for pur-

---

Court of Appeals for the Tenth Circuit, that an inter-insurance exchange was an unincorporated business association, not a corporation, for diversity purposes, in *Arbuthnot v. State Auto Ins. Assn.,* 264 F.2d 260 (Tenth Cir.1959); and *Grynberg v. B.B.L. Associates, supra,* in which the court, at 568, found it "surprising" that Congress had not made a decision regarding the "citizenship" of limited partnership entities.

**14.** 382 U.S. at 151, 86 S.Ct. at 272.

**15.** The *Sociedad en Comandita* was held to be a citizen of Puerto Rico, the jurisdiction under whose laws it was formed, in *Puerto Rico v. Russell & Co., supra.* Were the Court to determine in the instant case that the limited partnership was a citizen of the State of its creation and principal place of business, the result would be the same as that determined by reference to the citizenship of the general partner. It would be deemed to be a citizen of the State of California.

**16.** 16 How. 314 (57 U.S. 334, 14 L.Ed. 953) (1853).

**17.** The first and second dissenters desired to retain that rule, 16 How. at 338, 339 (57 U.S. at 360, 361, 14 L.Ed. 953).

**18.** *Id.,* 16 How. at 329 (57 U.S. at 350, 14 L.Ed. 953).

**19.** For the full discussion of the majority in *Marshall* on this subject, see 16 How. at 327–329 (57 U.S. 348–351, 14 L.Ed. 953).

**20.** *Id.,* 16 How. at 328 (57 U.S. at 350, 14 L.Ed. 953). The rule as to citizenship in class actions is the same today, *Supreme Tribe of Ben Hur v. Cauble,* 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673 (1921) as at the time of the suit between the branches of the Methodist Church, mentioned in *Marshall.*

**21.** 129 U.S. 677, at 682, 9 S.Ct. 426, at 428, 32 L.Ed. 800 (1889).

poses of diversity jurisdiction, *Great Southern Fire Proof Hotel Co. v. Jones.*[22] These cases are apparently still good law.[23]

The "limited partnership association" in *Great Southern Fire Proof Hotel Co. v. Jones* should not be confused with the modern limited partnership created under the Uniform Limited Partnership Act. The former consisted of partners who were all of one class, all having limited liability and "limited partner" status.[24] In addition, the partners had the same rights of ownership in partnership property as general partners in a modern limited partnership,[25] and the management was elected from among the "limited partners."[26] Moreover, the members of a joint stock company, as in *Chapman,* ordinarily do not have limited liability and, therefore, have a significant interest in litigation to which the company is a party.[27] Therefore, the *Chapman* and *Great Southern Fire Proof Hotel Co.* cases, while denying entity treatment, stand only for the rule that unincorporated common law business associations with only one class of members, all of whom may participate in the management of the business, are citizens, for diversity purposes, of all the states wherein their members are citizens. But these cases have no application to members of a second class within the association who cannot participate in the management of its business.

There is an additional reason not to treat limited partnerships created under the Uniform Limited Partnership Act as entities for purposes of diversity. There is some authority in California for the idea that

limited partnerships are not entities for all purposes.[28] Further, before limited partnerships are recognized in Federal Court as juridical entities having citizenship for diversity purposes, they should be more widely recognized as such in State courts, which have primary responsibility for interpreting the statutes under which they are created. In *Frazier v. Carlin,* 42 Colo.App. 226, 591 P.2d 1348 (1979), the Court held that a trial court had jurisdiction to render judgment against a limited partnership even though the limited partnership as such was not a party; only the general partner had been named as a party defendant and had been served with notice of the suit, but the Court held that this was sufficient notice to the partnership. Such treatment of limited partnerships as the fictitious business names of the general partners which operate them is consistent with the rule which the Court follows in the instant case but would not be consistent with treatment of limited partnerships as entities separate from the general partners.

Based on the authorities discussed above, the Court concludes that the rule in *Jett v. Phillips & Associates, supra,* does not apply to limited partnerships and that, for diversity jurisdiction purposes, the citizenship of a limited partnership should be determined by reference to the citizenship of the general partner(s) thereof and without regard to the citizenship of the limited partner(s). The Court further concludes that a limited partnership is not a juridical entity with an artificial citizenship, as is a corporation, for

---

**22.** 177 U.S. 449, 20 S.Ct. 690, 44 L.Ed. 842 (1900).

**23.** The Second Circuit, in *Mason v. American Express Co., supra,* see n. 10 herein, concluded that these cases had been overruled by *Puerto Rico v. Russell & Co.* The Supreme Court, in *United Steelworkers v. R.H. Bouligny, Inc., supra,* criticized this conclusion.

**24.** This is similar to another entity of the civil law, the *Sociedad de Responsibilidad Limitada* ("Ltd.").

**25.** See Comment: "Limited Partnerships and Federal Diversity Jurisdiction," 45 Chi.L.Rev. 384 at 389, n. 36 (1978).

**26.** See Comment, *supra,* n. 2, 13 Tulsa L.Jour. at 312, n. 53.

**27.** *Id.,* at 306, n. 15.

**28.** As far as the Court's research has revealed, this authority is only *dictum* from lower appellate courts, as in *Bedolla v. Logan & Frazer,* 52 Cal.App.3d 118, 125 Cal.Rptr. 59 (1975), and comment in legal treaties; see *Evans v. Galardi, supra,* 16 Cal.3d 300, 128 Cal.Rptr. at 34, 546 P.2d 313.

purposes of determining diversity jurisdiction.

Therefore, the Motion to Dismiss is denied.

The Motion of the Defendants to transfer this case to the Northern District of California, being stipulated and agreed to by the Plaintiff, is granted. The Clerk of the Court is directed to effect such transfer without delay.

The Motion of the Defendants to stay discovery pending rulings on the above Motions being moot is therefore denied.

IT IS SO ORDERED this 10th day of March, 1982.