NAMCO, INC., an Oklahoma Corporation, Plaintiff,

v.

Harold DAVIDSON, an Individual; OCCA, Inc., a Kansas Corporation; and Ottawa County Cattle Associates, Ltd., a Limited Partnership, Defendants.

No. 89–1282–K.

United States District Court, D. Kansas.

Nov. 15, 1989.

Marc A. Powell, Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, Kan., Russell W. Wallace, Tulsa, Okl., for plaintiff.

Gerald E. Williams, J. Patrick Shepard, Gage & Tucker, Overland Park, Kan., for OCCA, Inc.

David H. Martin, Corsicana, Tex., for Harold Davidson and Ottawa County Cattle Associates, Ltd.

MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

This action is before the court on the defendants' motions to dismiss for lack of subject matter jurisdiction. The plaintiff brought this suit for an alleged breach of contract and wrongful conveyance. Plaintiff, the holder of a promissory note, claims that defendant Davidson (the general partner) and the limited partnership entity (not the limited partners) are liable for failing to

pay over $677,000.00 on the note. Plaintiff also claims that Davidson caused a feedlot held by the limited partnership, Ottawa County Cattle Associates, Ltd., to be wrongfully transferred to a Kansas corporation, OCCA, Inc., in violation of Kansas law. Plaintiff seeks a monetary judgment, a lien upon the feedlot, and an order setting aside the transfer.

The court herein finds that there is not complete diversity, since the limited partnership is an Oklahoma entity and the plaintiff is an Oklahoma corporation, and thus grants defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction.

*Findings of Facts*

The material facts are not in dispute. Plaintiff is an Oklahoma corporation. Defendant OCCA, Inc. is a Kansas corporation. Defendant Harold Davidson is a citizen of Texas. He was the only general partner in Ottawa County Cattle Association, Ltd. (OCCA, Ltd.), a now dissolved limited partnership having its principal place of business in Ennis, Texas. OCCA, Ltd., was organized under the laws of, and received a Certificate of Limited Partnership from, the State of Oklahoma. (Memo. of Def. OCCA, Inc., Ex. 1, Amendment to Limited Partnership Agreement, filed with Oklahoma Secretary of State on Dec. 18, 1987.)

The limited partners with their respective residences at the time of the limited partnership's dissolution are as follows: Mr. Godwin, Arkansas; Mr. Newland, Kansas; Dr. Rogers, Oklahoma; Mr. Northrup, Oklahoma; Mr. Grisel, Oklahoma; Mr. Moreland, Oklahoma. The limited partners are not named as parties and apparently have no personal liability on this note due not only to their limited liability as limited partners, but also because of a release. Since the parties have not presented sufficient facts to establish the respective domiciles of all the limited partners, the court herein does not make a determination of the above limited partners' citizenship status.

*Conclusions of Law*

In *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806), the United States Supreme Court announced the well-settled rule that 28 U.S.C. § 1332 requires complete diversity of citizenship. That is, if any one defendant shares the same citizenry as any one plaintiff, diversity of citizenship does not exist. However, the Supreme Court has not yet addressed the precise issue of this case—whether the citizenship of the modern limited partnership, for purposes of diversity jurisdiction, should be based upon the citizenship of its general partners only, the general partners and the state where the limited partnership was formed, or the general partners and the limited partners.

**I. *Limited Partner Citizenship***

■ The court will first address an issue on which there is a split of authority among the circuit courts—whether the limited partner citizenship is to be considered for diversity purposes. The split is between *Mesa Operating Ltd. Partnership v. Louisiana Intrastate Gas*, 797 F.2d 238 (5th Cir.1986); *Colonial Realty Corp. v. Bache & Co.*, 358 F.2d 178 (2d Cir.), *cert. denied*, 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966) (holding that limited partner citizenship is not to be considered); and *Stouffer Corp. v. Breckenridge*, 859 F.2d 75 (8th Cir.1988); *New York State Teachers Retirement System v. Kalkus*, 764 F.2d 1015 (4th Cir.1985); *Elston Inv., Ltd. v. David Altman Leasing Corp.*, 731 F.2d 436 (7th Cir.1984); *Carlsberg Resources Corp. v. Cambria Sav. & Loan Ass'n*, 554 F.2d 1254 (3rd Cir.1977) (holding that limited partner citizenship is to be considered). There is no Tenth Circuit decision resolving this issue. *Tuck v. U.S.A.A.*, 859 F.2d 842 (10th Cir.1988), cited by defendants, is inapplicable since it applies only to unincorporated associations and not to limited partnerships.

In Kansas, the two reported cases which have addressed the issue of whether limited partner citizenship should be considered for diversity purposes reached opposite results. In *Petroleum Data Services, Inc. v.*

*First City Bancorporation of Texas, Inc.,* 622 F.Supp. 1022 (D.Kan.1985), this court found that the citizenship of a limited partnership is determined by the citizenship of its general partners, not its limited partners. This court cited with approval Judge Brett's decision in *Sixth Geostratic Energy Drilling Program 1980 v. Ancor Exploration Co.,* 544 F.Supp. 297 (N.D.Okla. 1982):

> The question ultimately must be determined by the *modern-day* realities attending limited partnerships. It is clear a limited partner stands in a legal position more closely analogous to that of a corporate shareholder than to that of a partner in a general partnership or that of a member of an unincorporated association. The limited partner, similar to a shareholder, is generally liable only to the extent of his or her capital contribution. In addition, the limited partner may be said to have even less voice than the shareholder in managing or controlling the activities of the business entity because he or she lacks voting rights.

*Ancor,* 544 F.Supp. at 303 (emphasis added). After fully reviewing the conflicting authorities, this court followed the line of cases which disregard the citizenship of limited partners in determining diversity. This court determined that this was the better reasoned decision due to the "real party in interest" rationale. *Petroleum Data Services, Inc.,* 622 F.Supp. at 1026.

In *Kansas Baptist Convention v. Mesa Operating Ltd. Partnership,* 703 F.Supp. 73 (D.Kan.1989), Judge Crow came to a different conclusion. He noted the absence of Tenth Circuit authority but believed that the better rule was to consider the citizenship of limited partners in determining diversity. Judge Crow rejected the "real party in interest" test adopted by the Second and Fifth Circuits because he found it "muddles the water of diversity jurisdiction and leaves the critical issue to turn upon the individual facts of each case." *Id.* at 75.

This court still believes the better rule is to disregard the citizenship of limited partners in determining diversity jurisdiction.

The majority of courts which have chosen to follow such a rule have followed the Second Circuit decision in *Colonial Realty Corp. v. Bache & Co.,* 358 F.2d 178 (2d Cir.), *cert. denied,* 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966). In *Colonial Realty,* the Second Circuit held that where there was diversity between the plaintiff and all of the general partners of the defendant limited partnership, the identity of citizenship between the plaintiff and a limited partner was not fatal. *Colonial Realty,* 358 F.2d at 183. The court based this decision on a New York statute which said that a limited partner is not a proper party to a proceeding by or against a partnership. The court reasoned that a suit against a New York limited partnership must be considered to be against the general partners, and that the identity of citizenship between a limited partner and the plaintiff would not destroy diversity. *Id.*

Although the Kansas and Oklahoma versions of the Revised Uniform Limited Partnership Act do not contain the exact language of the New York statute cited in *Colonial Realty,* the law in this state is very similar. K.S.A. 56–1a203 (Supp.1988) states:

> [A] limited partner is not liable for the obligations of a limited partnership unless the limited partner is also a general partner or, in addition to the exercise of the rights and powers of a limited partner, the limited partner participates in the control of the business.

This statute establishes the limited partner's limited liability to third parties. It also implies that limited partners are not proper parties to suits against the partnership for the obligations of the limited partnership. The law in Oklahoma is the same. *See* 54 Okla.Stat.Ann. § 320. This limited liability is similar to the limited liability of a shareholder of a corporation. The real parties in this controversy are the general partners and the limited partnership itself.

An important decision by the U.S. Supreme Court applicable here is *Navarro Sav. Ass'n v. Lee,* 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980). In that case, the Supreme Court disregarded the citizen-

ship of the beneficial shareholders of a business trust and held that, for purposes of diversity jurisdiction, the trustees were the real parties in interest upon which citizenship for the trust should be based. The Supreme Court focused upon the trustees' control over the trust property in making this determination. *Id.* The Court in *Navarro* said:

> Early in its history, this Court established that the "citizens" upon whose diversity a plaintiff grounds jurisdiction must be *real and substantial parties to the controversy.* Thus, a federal court must disregard *nominal or formal parties and rest jurisdiction only upon the citizenship of the real parties to the controversy.*

*Navarro,* 446 U.S. at 460–61, 100 S.Ct. at 1781–82 (emphasis added; citations omitted). *See also Susquehanna & Wyoming Valley R.R. & Coal Co. v. Blatchford,* 78 U.S. (11 Wall.) 172, 177, 20 L.Ed. 179 (1870); *Marshall v. Baltimore & Ohio R.R.,* 57 U.S. (16 How.) 314, 328–29, 14 L.Ed. 953 (1853); *McNutt v. Bland,* 43 U.S. (2 How.) 9, 15, 11 L.Ed. 159 (1844); and Fed.R.Civ.P. 17(a).

The Supreme Court decision in *Navarro* affirmed the Fifth Circuit decision in the case. *Lee v. Navarro Sav. Ass'n,* 597 F.2d 421 (5th Cir.1979), *aff'd,* 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980). Although the Supreme Court did not specifically discuss limited partnerships, the Fifth Circuit drew an analogy between a business trust, which was at issue in that case, and a limited partnership.

Later, in *Mesa v. Operating Ltd. Partnership v. Louisiana Intrastate Gas Corp.,* 797 F.2d 238, 242 (5th Cir.1986), the Fifth Circuit had the following to say about its earlier holding in *Lee v. Navarro* and the Supreme Courts affirmation of such holding:

> In *Lee,* we drew an analogy between a business trust and a limited partnership. "The trust here is analogous to a limited partnership, and the citizenship of its beneficiary shareholders should not be counted in determining the existence of diversity jurisdiction." 597 F.2d at 425.

We relied on the Declaration of Trust in that case to determine that the trustees had exclusive control. The exclusive power to manage and control the trust and to control its litigation was precisely the point on which the Supreme Court affirmed.

In addition, the court in *Sixth Geostratic Energy Drilling Program 1980,* 544 F.Supp. 297, 305 (N.D.Okla.1982), said the following about the Supreme Court's affirmation of the Fifth Circuit in *Navarro:*

> Nowhere in the Supreme Court's opinion is there an indication of dissatisfaction with the analysis employed by the Court of Appeals, and, in fact, the Supreme Court relied on a real-party-in-interest analysis in much the same way as did the Court of Appeals. This being so, and inasmuch as Justice Blackmun [Dissenting Opinion] expressly accepted the approach utilized by the Court of Appeals, any analytical differences between the majority and Justice Blackmun would nevertheless appear to yield the same result, that is, only the citizenship of real parties in interest is to be considered on the issue of diversity citizenship.

Such analysis seems to compel the conclusion that the same principles and rationale that were applied by the Supreme Court in *Navarro* should apply to limited partnerships.

In this case the limited partners had no control over the operation of the limited partnership. (Pl.'s Memo., Ex. A, p. 16.) In fact, they are not even "nominal or formal parties" since all limited partners have, according to plaintiff, been released by Davidson and the partnership of all liability on the note in question. The citizenship of these released and uninvolved limited partners should be disregarded since they are not "substantial parties" to this controversy. *Navarro Savings v. Lee,* 446 U.S. at 460, 100 S.Ct. at 1781–82.

In *Wroblewski v. Brucher,* 550 F.Supp. 742 (W.D.Okla.1982), the court relied on *Navarro* to reach the conclusion that the citizenship of limited partners should be disregarded for the purposes of determining diversity jurisdiction. The *Wroblewski*

court concluded that the limited partners were not real parties in interest and their citizenship should not be considered because (1) the title of the assets in the limited partnership was in the name of the partnership entity or in the name of one or more of the general partners, (2) the general partner had exclusive management of the assets free of any control by the limited partners, and (3) the general partner controlled litigation on behalf of the limited partnership. *Id.* at 745–46.

In this case, the feedlot in Ottawa County, Kansas was apparently titled in the name of OCCA, Ltd. before it was transferred to OCCA, Inc. The limited partners had no title ownership to the feedlot in question. The general partner, Harold Davidson, was solely responsible for the management of the limited partnership and the feedlot. In fact, the limited partnership agreement stated that:

> The Limited Partners may take no part in the conduct or control of the business or affairs of the Partnership, such participation and control ... is vested exclusively in the General Partner and its agents.

(Pl.'s Memo., Ex. A, p. 16.) After the feedlot was transferred to OCCA, Inc., Harold Davidson continued to have responsibility for the operation of the feedlot. At the time this lawsuit was filed, Davidson served as president of the Kansas corporation, OCCA, Inc. Thus, in this case (as with any limited partnership covered by the Uniform Limited Partnership Act) the limited partners in no way either (1) held title to assets of the limited partnership, (2) managed those assets, or (3) controlled litigation to which the partnership was a party. *Wroblewski,* 550 F.Supp. at 745.

In *Navarro,* 446 U.S. at 465 n. 14, 100 S.Ct. at 1784 n. 14, the Supreme Court noted that the beneficiary shareholders "may elect and remove trustees; they may terminate the trust or amend the declaration; and they must approve any disposition of more than half of the trust estate. (Citation omitted.) No other shareholder action can bind the trustee." Thus, it is evident the limited partners at issue in this case have even less control and interest in the controversy than did the beneficiary shareholders at issue in *Navarro.*

In addition, as was quoted by *Lee v. Navarro Sav. Ass'n,* 597 F.2d at 425, Comment, *Limited Partnerships and Federal Diversity Jurisdiction,* 45 U.Chi.L.Rev. 348, 407, states the real party in interest principle very succinctly:

> Thus, the principle unifying the apparently conflicting jurisdictional precedents is not the "persons composing" rule but the "control" or "real party" concept. The members of joint stock companies, limited partnership associations, and general partnerships "count" for diversity purposes because all the members exercise management powers. This control is manifested in several ways: in the management role of the respective members, their rights with respect to entity property, their ability to effect dissolution of the entity, their liability for the entity's debts and obligations, and in their capacity to sue and be sued on behalf of the entity. Corporate shareholders and trust beneficiaries, in contrast, have only "equitable" interests in their respective entities. *Because limited partners do not enjoy the requisite control over the partnership, they have only an "equitable" interest in proceedings brought by or against the partnership, and thus, like corporate shareholders and trust beneficiaries, should not be counted for diversity purposes.* The result in *Colonial Realty,* far from expanding the diversity jurisdiction, is but an application of a principle underlying the Supreme Court's diversity jurisdiction decisions over the past 125 years.

(Emphasis changed; footnotes omitted.)

Therefore, in accordance with all of the above, the better rule is that limited partners are not real parties to the controversy. Consequently, limited partner citizenship should not be considered for diversity purposes.

The defendants cite *Great Southern Fireproof Hotel Co. v. Jones,* 177 U.S. 449, 20 S.Ct. 690, 44 L.Ed. 842 (1900), as authority for requiring consideration of limited

partner citizenship for the diversity status of the modern limited partner citizenship. However, the district court in *Wroblewski v. Brucher* properly distinguished the "limited partnership association" in *Great Southern* from the modern limited partnership:

> The "limited partnership association" in *Great Southern Fire Proof Hotel Co. v. Jones* should not be confused with the modern limited partnership created under the Uniform Limited Partnership Act. The former consisted of partners who were all of one class, all having limited liability and "limited partner" status. In addition, the partners had the same rights of ownership in partnership property as the general partners in a modern limited partnership, and the management was elected from among the "limited partners."

*Wroblewski v. Brucher*, 550 F.Supp. at 751. Since *Great Southern* involved a limited partnership which had *no* general partner, it is easily distinguished from the modern limited partnership. The modern limited partnership has two classes of partners: (1) a general partner who has unlimited liability and control, and (2) the uninvolved investor limited partner. Thus, it is evident that the modern limited partnership is substantially different than the limited partnership association in *Great Southern*.

In addition, the Fifth Circuit in *Mesa Operating Ltd. Partnership* also distinguished *Great Southern* and relied upon *Navarro* by finding as follows:

> Associations thus described [in *Great Southern*] are clearly quite different from a limited partnership with two separate and distinct classes of members, one of which enjoys exclusive ownership of assets and control over all legal and business decisions. We do not regard *Navarro* as having endorsed application of the holdings in these early cases to the modern limited partnership....

*Mesa Operating Ltd. Partnership*, 797 F.2d at 241. The Fifth Circuit went on to say the following about the Supreme Court's holding in *Navarro:*

The Court held the trustees the real parties to the controversy because they, and they alone among the membership, held title to the assets, managed the assets, and controlled any litigation involving the trust. Similarly, in the limited partnership here, the general partners, and they alone as against the limited partners, control and manage assets, conduct all business and control all litigation.

*Mesa Operating Ltd. Partnership*, 797 F.2d at 242.

Therefore, since the general partner in the case at bar, like the general partner in *Mesa Operating*, had the exclusive control over management of the assets, conduct of all business, and control of litigation, and since diversity jurisdiction is to be determined "only upon the citizenship of the real parties to the controversy," the residences of the uninvolved released limited partners must be disregarded. *See Navarro v. Lee*, 446 U.S. at 460, 100 S.Ct. at 1781–82.

## II. *Limited Partnership as an Entity*

■ Since the court has determined the real party to the controversy rationale is to be followed, and therefore that limited partner citizenship is not to be used for the diversity status of the limited partnership, the next question to be addressed is whether the limited partnership itself is a real party to the controversy. No one disputes that the general partners are real parties to the controversy—they exercise extensive control over the management of the limited partnership and are personally liable for its debts. In addition to the general partners, however, this court finds herein that the limited partnership itself should be counted as a real party to the controversy, and that the state in which the limited partnership was formed should be considered for diversity of citizenship purposes.

The only case found by this court which directly considers this issue concluded, in *dicta*, that Supreme Court precedent precluded viewing the limited partnership as a separate entity. *Wroblewski*, 550 F.Supp. at 749.[1] However, a close review of the

---

**1.** Such a finding was *dicta* because the court

said that "[w]ere the Court to determine in the

history of diversity jurisdiction and its application to business entities directs the conclusion that the state in which a limited partnership is formed should be considered for diversity purposes.

In 1789, Congress provided for federal jurisdiction in suits between "citizens" of different states—diversity jurisdiction. 1 Stat. 78 (1798). Shortly thereafter the question arose as to whether a corporation was to be deemed a "citizen" for purposes of the statute. Chief Justice Marshall initially held that a corporation was not a "citizen" and that it might sue and be sued under the diversity statute only if none of its shareholders were citizens of the same state as an opposing party. *Bank of the United States v. Deveaux,* 9 U.S. (5 Cranch) 61, 3 L.Ed. 38 (1809). However, the Court later reversed itself and ruled that a corporation was to be treated as a citizen of the state which created it. *Louisville, C. & C. R. Co. v. Letson,* 43 U.S. (2 How.) 497, 11 L.Ed. 353 (1844). Ten years later the court revisited the question. In a compromise which lasted more than a century, the court indulged in the fiction that although a corporation was not itself a citizen for diversity purposes, the persons acting for the corporation and using the corporate name "may be justly presumed to be resident in the state which is the necessary habitat of the corporation"—its shareholders would conclusively be presumed citizens of the incorporating state. *Marshall v. Baltimore & O. R. Co.,* 57 U.S. (16 How.) 314, 328, 14 L.Ed. 953 (1853).

In 1932, the Supreme Court addressed a related issue—whether a sociedad en comandita could be regarded as a juridical entity for diversity jurisdiction purposes. The Court held as follows:

> In the law of its creation the sociedad is consistently regarded as a juridical person. It may contract, own property and transact business, sue and be sued in its own name and right. Its members are not thought to have a sufficient personal interest in a suit brought against the entity to entitle them to intervene as

parties defendant. It is created by articles of association filed as public records. Where the articles so provide, the sociedad endures for a period prescribed by them regardless of the death or withdrawal of individual members. Powers of management may be vested in managers designated by the articles from among members whose participation is unlimited, and they alone may perform acts legally binding on the sociedad. Its members are not primarily liable for its acts and debts, and its creditors are preferred with respect to its assets and property over the creditors of individual members, although the latter may reach the interests of the individual members in the common capital. Although the members whose participation is unlimited are made contingently liable for the debts of the sociedad in the event that its assets are insufficient to satisfy them, this liability is of no more consequence for present purposes than that imposed on corporate stockholders by the statutes of some states. These characteristics under the Codes of Puerto Rico give content to their declaration that the sociedad is a juridical person. That personalty is so complete in contemplation of the law of Puerto Rico that we see no adequate reason for holding that the sociedad has a different status for purposes of federal jurisdiction than a corporation organized under that law.

*People of Puerto Rico v. Russell & Co.,* 288 U.S. 476, 481–82, 53 S.Ct. 447, 449, 77 L.Ed. 903 (1933) (citations omitted).

In addition to qualifying as a "juridical person" using the above criteria, a limited partnership is even more of a separate entity than was the sociedad, because the limited partners exercise no control over the management of the venture and are not personally liable for the debts of the limited partnership. Despite the fact this seems to compel the conclusion that a limited partnership is to be treated as a "juridi-

---

instant case that the limited partnership was a citizen of the State of its creation and principal place of business, the result would be the same

as that determined by reference to the citizenship of the general partners." *Wroblewski,* 550 F.Supp. at 750 n. 15.

cal person," the court in *Wroblewski*, 550 F.Supp. at 749–50, said the following:

[T]he value of *Puerto Rico v. Russell & Co.* as precedent was practically eliminated by *dictum* in the subsequent case of *United Steelworkers v. R.H. Bouligny, Inc.*, which criticized the Second Circuit's application of the reasoning of *Puerto Rico v. Russell & Co.* to a case involving a New York joint stock company with 20,000 shareholders and distinguished *Puerto Rico v. Russell & Co.* as "fitting an exotic creature of the civil law ... into a Federal scheme which knew it not."

(Footnotes omitted.) However, to conclude from the above that *Puerto Rico v. Russell & Co.* has no precedential value is not correct.

First, this court notes the fact that the Court in *United Steelworkers of America, AFL–CIO v. R.H. Bouligny, Inc.*, 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965), did not specifically overrule *Puerto Rico v. Russell & Co.* Consequently, it is still good law. Secondly, even though *United Steelworkers*, 382 U.S. at 151, 86 S.Ct. at 275, does seem to have some strong language against the *extension* of diversity jurisdiction, its holding is consistent with the Supreme Court's historical treatment of mere associations.

In *Puerto Rico v. Russell & Co.*, 288 U.S. at 480, 53 S.Ct. at 448, the Court sums up its historical treatment of associations as follows:

[S]tatus as a unit for purposes of suit alone, as in the case of a joint stock company, *see Chapman v. Barney*, 129 U.S. 677, 682 [9 S.Ct. 426, 428, 32 L.Ed. 800 (1889)], ... or a limited partnership [association], not shown to have the other attributes of a corporation, *Great Southern Fire Proof Hotel Co. v. Jones*, 177 U.S. 449 [20 S.Ct. 690, 44 L.Ed. 842 (1900)], ... has been deemed a legal personality too incomplete; what was but an association of individuals for so many ends and a juridical entity for only a few, was not easily to be treated as if it were a single citizen.

The treatment of the labor union as an association of individuals for jurisdictional purposes by the *United Steelworkers* Court is consistent with the above analysis.

In addition, in *United Steelworkers*, 382 U.S. at 152, 86 S.Ct. at 276, the Court noted the key distinction between a mere association and a juridical entity for diversity purposes when it said that it would be too difficult to fashion a "test for ascertaining of which State the labor union is a citizen." However, no such problem exists in extending such jurisdiction to a corporation because "the State of incorporation was a natural candidate" for citizenship of the corporation. *Id.* To put it another way, there is not a judicially manageable standard to objectively determine what states a mere association should be deemed a citizen.

On the other hand, the modern limited partnership has a birth certificate similar to that of a corporation. *See, e.g.,* K.S.A. 56–1a151 (Supp.1988) ("In order to form a limited partnership, a certificate of limited partnership must be executed and filed in the office of the secretary of state"). Just like a corporation, a limited partnership cannot come to life (cannot legally do business) until it has complied with all the laws of its "birth state" for formation of a limited partnership. Thus, a limited partnership has a "natural candidate" for citizenship—its state of formation.

The Supreme Court has historically been willing to entertain a legal fiction to determine a business entity's citizenship if (1) the business had a certain class of investors or members who are nominal parties with an insignificant interest in the controversy and someone else who could be said to be the true or real party to the controversy, and (2) if there was a judicially manageable objective standard to determine the citizenship status of the real party to the controversy (a "natural candidate" for citizenship). *See Navarro*, 446 U.S. at 460–61, 100 S.Ct. at 1781–82 (beneficial shareholders nominal parties and trustee real party to the controversy); *Puerto Rico*, 288 U.S. at 481–82, 53 S.Ct. at 449 (sociedad a "juridical person" because it is

considered such by the law which created it); and *Marshall v. Baltimore & O.R. Co,* 57 U.S. (16 How.) at 328 (shareholders conclusively presumed to be citizens of the incorporating state).

A limited partnership formed under the Uniform Limited Partnership Act is a business that has a class of nominal and uninterested investors (the limited partners) and someone else who is the true or real party to the controversy (the general partners and the limited partnership itself). In addition, there is a "natural candidate" for the limited partnership's citizenship (the state of formation). Therefore, the state where the limited partnership is formed and the states where the general partners are domiciled ought to be the States considered for the diversity status of a limited partnership.

### III. *Policy Considerations*

The policy reasons most often asserted for the rule that limited partner citizenship should be considered for diversity purposes is based on an argument that the Supreme Court mandated in *United Steelworkers* that any "expansion" in diversity jurisdiction must come from Congress, and that such a rule promoted predictability of results and judicial economy by announcing a "bright line rule." *See, e.g., Stouffer,* 859 F.2d 75, 76 (8th Cir.1988); and *Kansas Baptist Convention,* 703 F.Supp. 73, 75 (D.Kan.1989). However, as has already been pointed out, the Supreme Court has historically entertained a legal fiction of citizenship if its criteria of real party to the controversy and "natural candidate" for citizenship are met. Thus, deeming a limited partnership a citizen of its formation state should not be viewed as an "expansion" of diversity jurisdiction. In addition, a close review of *United Steelworkers* reveals its rationale does not apply to modern day limited partnerships.

It is true that the Supreme Court in *United Steelworkers* said that "pleas for extension of the diversity jurisdiction to hitherto uncovered broad categories of litigants ought to be made to the Congress and not to the Courts." *United Steelwork-*

*ers,* 382 U.S. at 150–151, 86 S.Ct. at 275. However, the issue in *United Steelworkers* concerned the citizenship status of an unincorporated labor union and was made in light of the "firmly established rule" in *Chapman v. Barney,* 129 U.S. 677, 9 S.Ct. 426, 32 L.Ed. 800 (1889), which mandated that the citizenship of all of an association's members be considered for diversity purposes. In rationalizing a distinction between associations and corporations, the Court said that a test for ascertaining of which state the labor union is a citizen would be too difficult for the Court since labor unions have local as well as national organizations, and thus, there is no "natural candidate" of citizenship for an association. *United Steelworkers,* 382 U.S. at 152–53, 86 S.Ct. at 276. "Extending the jurisdiction to corporations raised no such problem, for the State of incorporation was a *natural candidate,* its arguable irrelevance in terms of the policies underlying the jurisdiction being outweighed by its certainty of application." *Id.* at 152, 86 S.Ct. at 276 (emphasis added).

A limited partnership, like a corporation, does have a "natural candidate" of citizenship—the state under whose laws it was formed. In order to form a limited partnership under the modern Uniform Limited Partnership Act, the people forming the limited partnership must (similar to the incorporators of a corporation) follow the applicable state laws for formation before the limited partnership can legally do business. *See, e.g.,* K.S.A. 56–1a151 (Supp. 1988). Consequently, a limited partnership has a place of birth and birth certificate very similar to what a corporation has. Thus, it is evident a limited partnership should be treated more like a corporation than a mere association for diversity purposes.

In addition, a rule that a limited partnership should be treated as a citizen of the state of its formation and of the states where its general partners are citizens would better serve the policies of predictability of results, judicial economy and federalism. Such rule serves predictability of results because the limited partnership's citizenship would be easily ascertainable: a

certificate of limited partnership must be filed at the Secretary of State's Office and the citizenship of the general partners would be easily ascertainable since they are active in the management and control of the limited partnership. Judicial economy is also served by the fact citizenship of the limited partnership and the general partners is easily ascertained. Since it would be difficult to ascertain with certainty the citizenship of all of the limited partners if, as is likely, the limited partners are numerous and uninvolved, the likelihood of a mistaken belief of diversity and the filing of a case in federal court without subject matter jurisdiction is reduced. Finally, policies of federalism would be better served. As mandated by *Erie F.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), state substantive law controls in diversity cases. Since state law gives a limited partnership life and a birth certificate, the federal courts should give such law effect by declaring that a limited partnership is a citizen of the state which gave it birth.

In contrast, the rule that limited partner citizenship should be considered in determining the diversity status of a limited partnership, adopted by some circuit courts, and by Judge Crow in *Kansas Baptist Convention*, does not serve the policies of predictability of results, judicial economy and federalism as well. Since it is likely the investors or limited partners are numerous and uninvolved, and thus, their collective citizenship difficult to ascertain, a suit may be filed in federal court merely to get a definitive determination of the domicile of all of the limited partners. Thus, predictability of result is not well served. In addition, since it would be difficult to ascertain with certainty the domicile of all of the limited partners, it may not be determined until late in a suit that an uninvolved limited partner is in fact a citizen of the same jurisdiction as that of an opposing party. Consequently, the suit would have to be dismissed and judicial economy would not be well served. Finally, federalism is not well served by requiring the consideration of limited partner citizenship for diversity since state law makes limited partners, at most, nominal parties to a controversy by or against a limited partnership.

### Conclusion

Therefore, based on all of the above, the better rule is that limited partner citizenship is *not* to be used for diversity purposes. The citizenship of a limited partnership for diversity jurisdiction purposes should be based on the following: (1) the formation state of the limited partnership, and (2) the states of which the general partners are citizens. Furthermore, if the above rule is ultimately adopted by the Tenth Circuit, it will do a much better job of promoting the policies of predictability of results, judicial economy, and federalism.

In the case at bar, since the plaintiff is an Oklahoma corporation and one of the defendants is an Oklahoma limited partnership, there is no diversity of citizenship pursuant to 28 U.S.C. § 1332. Consequently, the case must be dismissed for want of subject matter jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1).

IT IS THEREFORE ORDERED this 15th day of November, 1989, that the defendants' motions to dismiss for lack of subject matter jurisdiction are granted.