**SIXTH GEOSTRATIC ENERGY DRILLING PROGRAM 1980, Seventh Geostratic Energy Drilling Program 1980, and Eighth Geostratic Drilling Program 1980, Plaintiffs,**

v.

**ANCOR EXPLORATION COMPANY, Ancor Petroleum, Inc., Harry E. McPhail, Jr., Docko, Inc., Bluebell Oil and Gas, Inc., Ancor Exploration Co. 1980 Drilling Venture, A/S Docko Corporation, and Ole Gunnar Selvaag, Defendants.**

**FIRST AND SECOND ANCOR–GEOSTRATIC DRILLING PARTNERSHIPS 1980, Plaintiffs,**

v.

**SIXTH AND SEVENTH GEOSTRATIC ENERGY DRILLING PROGRAMS 1980, Robert S. Sinn and Jan S. Mirsky, Defendants.**

Nos. 81–C–576, 81–C–577 and 81–C–836.

United States District Court,
N. D. Oklahoma.

May 26, 1982.

As Amended June 21, 1982.

Mack Braly, Tulsa, Okl., Paul C. Kurland, New York City, for Sixth, Seventh and Eighth Geostratic Drilling Programs 1980.

James L. Kincaid, Tulsa, Okl., Jim K. Goodman, Oklahoma City, Okl., for Ancor Exploration Co., Ancor Petroleum, Inc., Harry E. McPhail, Jr., Docko, Inc., Bluebell Oil and Gas, Inc., and Ancor Exploration Co. 1980 Drilling Venture.

## ORDER

BRETT, District Judge.

This matter came on for hearing on May 4, 1982 on defendants' Motion to Dismiss. For the reasons set forth below, the motion is denied.

In support of their motion, defendants advance essentially two arguments. First, defendants contend First Ancor-Geostratic Drilling Partnership 1980, Second Ancor-Geostratic Drilling Partnership 1980 and Third Ancor-Geostratic Drilling Program 1980 (hereinafter referred to as "the drilling partnerships" or "the unjoined parties") are indispensable parties to the instant action, and therefore must be joined as plaintiffs or defendants. Second, defendants assert the joinder of these additional parties, all of which are limited partnerships, will destroy diversity of citizenship and thus deprive this Court of subject matter jurisdiction over the instant action. Plaintiffs contend the drilling partnerships are not indispensable parties, but even if they are determined to be such, their joinder will not defeat diversity of citizenship.

### I

The Court's review of plaintiffs' Second Verified Amended Complaint discloses numerous claims alleged against the drilling partnerships. In addition, plaintiffs have moved for the appointment of a receiver over the assets of the drilling partnerships. Plaintiffs argue, however, inasmuch as the parties who allegedly are in control of the assets of the drilling partnerships and constitute the general partners of such partnerships are already parties to this action, the Court can provide full relief to plaintiffs without adding the drilling partnerships as parties. Further, plaintiffs contend the addition of the drilling partnerships as parties will afford the Court no greater latitude in fashioning an order of relief than already exists by virtue of the parties presently named in the action.

Rule 19(a) of the Federal Rules of Civil Procedure provides in pertinent part as follows:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his

absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party.

■ In the instant matter, defendants have painstakingly set forth in Appendix A to their brief in support of their motion the claims alleged against or the relief sought from or on behalf of the unjoined parties. Having reviewed such appendix and the Second Verified Amended Complaint, the Court concludes it need not individually consider each claim against the unjoined parties to reach the conclusion that such parties are indispensable to the maintenance of this action. Viewed in their totality, the claims for relief asserted against the unjoined parties are so substantial that the Court finds complete and effective relief cannot be fashioned in this case without the joinder of the unjoined parties. Of particular significance at this stage of the case is plaintiffs' motion for appointment of a receiver of the assets of the drilling partnerships. Although plaintiffs maintain these assets are currently under the control of some of the defendants and, therefore, the

receivership proceeding is for the benefit of the unjoined parties as well as the plaintiffs, this allegation, even if proved, would not alter the basic fact plaintiffs are seeking to impress a receivership on entities not parties to this action. The Court concludes this request for relief alone is sufficient to require the joinder of the drilling partnerships. Similarly, although plaintiffs assert much of the relief requested will, if granted, actually run in favor of the drilling partnerships, the Court concludes, primarily on the basis of the motion for appointment of a receiver, the drilling partnerships must be joined as party defendants. In summary, in accordance with Rule 19(a), the Court concludes the absence of the drilling partnerships as parties to this action would impair their ability to protect their interests, especially in light of the motion for appointment of a receiver of their assets. *See* Wright & Miller, Federal Practice and Procedure: Civil § 1604.[1]

## II

■ Having decided the drilling partnerships must be added as parties defendant herein, the Court is faced with the question whether such joinder defeats diversity of citizenship and thus deprives this Court of jurisdiction over the subject matter of this action. The Court concludes the joinder of the drilling partnerships does not defeat diversity of citizenship for the reasons set forth below.

1. The Court's conclusion that the joinder of the drilling partnerships does not operate to defeat diversity of citizenship under 28 U.S.C.A. § 1332 renders unnecessary an inquiry as to whether the action would have proceeded under Rule 19(b) of the Federal Rules of Civil Procedure. In this regard, the Court notes the equities of the situation preponderate strongly in favor of plaintiffs. In the agreed order of November 6, 1981, the parties addressed and stipulated to a number of jurisdictional issues. Although not brought to the attention of the Court at that time, it appears in retrospect the issue of the existence of complete diversity among the parties *vel non* was contemplated by the parties prior to entering into the stipulations recited in that order. Of course, the parties cannot confer jurisdiction by stipulating to

the existence of subject matter jurisdiction in this or any other court. *Thomas v. Board of Trustees,* 195 U.S. 207, 25 S.Ct. 24, 49 L.Ed. 160 (1904). A fair reading of the stipulations entered into in the order of November 6, 1981, however, leads the Court to conclude the parties at least thought the jurisdictional issues had been decided. Nor have the subsequent amendments of plaintiffs' complaint altered the jurisdictional facts extant on that earlier date. It appears reasonable to assume, as contended by plaintiffs' counsel at the hearing on the instant motion, plaintiffs would not have so willingly agreed to transfer the action pending in federal district court in New York State to this forum had they not been led to believe all jurisdictional issues had been resolved.

As may be observed from the chart below[2], Messrs. Sinn and Mirsky are residents of New York and Florida, respectively, and each is a general partner in the investor partnerships.[3] In addition, each is a limited partner in the drilling partnerships. The Court having determined the drilling partnerships must be added as parties defendant in this action, the question becomes whether the presence of Sinn and Mirsky as limited partners of the defendant drilling partnerships operates to defeat diversity of citizenship between the parties plaintiff and the parties defendant. The inquiry then is whether the citizenship of a limited partnership is determined by reference to the citizenship of its general partners alone, or whether it is determined by reference to the citizenship of the general partners as well as the citizenship of the limited partners.

Although acknowledging the existence of authority to the contrary, defendants contend the better reasoned rule is that stated by the Court of Appeals for the Third Circuit in *Carlsberg Resources Corporation v. Cambria Savings and Loan Association*, 554 F.2d 1254 (3rd Cir. 1977). In *Carlsberg*, the Court faced the precise question before this Court and concluded the citizenship of limited partners must be considered in determining whether the requisite diversity exists. As stated by that Court, the primary

policy concerns underlying its holding were judicial economy and federalism. 554 F.2d at 1262.

The *Carlsberg* case features a thorough dissenting opinion written by Judge James Hunter III. In dissent, Judge Hunter examined the realities of the limited partnership as it exists in the modern-day business world and concluded the citizenship of limited partners need not be considered in determining whether diversity exists. Specifically, Judge Hunter addressed the distinction between general and limited partnerships:

> In a general partnership, each partner is jointly and equally responsible for the organization affairs. Each can sue on behalf of the partnership. Thus when a general partnership brings suit in federal court, alleging diversity jurisdiction, the court turns to state law and determines that each partner is jointly liable and responsible; therefore, each must be 'counted' for diversity purposes.

554 F.2d at 1263. Turning then to state law and noting every state and the Virgin Islands have adopted the Uniform Limited Partnership Act, he observed limited partners are not proper parties to proceedings by or against the limited partnership under section 26 of the Act. He thus concluded, if limited partners are not proper parties to actions by or against the limited partner-

**2.**

Second Ancor-Geostratic Drilling Partnership 1980 bears the same relationship to Seventh Geostratic Energy Drilling Program 1980 as that illustrated above between First Ancor-Geostratic Drilling Partnership 1980 and Sixth Geostratic Energy Drilling Program 1980; similarly, Third Ancor-Geostratic Drilling Partnership 1980 occupies an identical position relative

to Eighth Geostratic Energy Drilling Program 1980.

**3.** The "investor partnerships" are Sixth Geostratic Energy Drilling Program 1980, Seventh Geostratic Energy Drilling Program 1980, and Eighth Geostratic Energy Drilling Program 1980.

ship, their citizenship should not be considered in determining diversity.

Defendants also advance the case of *Grynberg v. B. B. L. Associates*, 436 F.Supp. 564 (D.Col.1977) in support of their motion. In *Grynberg*, the district court followed the holding in *Carlsberg* primarily on the basis that

> The question of federal jurisdiction cannot always be decided according to what various states determine the state substantive law should be.

436 F.Supp. at 568. *Grynberg* expressed the additional concern that in looking to state law pursuant to Rule 17, Fed.R.Civ.P., dealing with capacity to sue for diversity purposes the Court would be impermissibly expanding the court's jurisdiction in contravention of Rule 82, Fed.R.Civ.P. Thus, although noting the popularity of limited partnerships and their "quasi-corporate characteristics", the Court concluded it was for Congress and not the courts to "add to the burden of the federal docket." 436 F.Supp. at 568.

The issue here presented was first addressed by the Court of Appeals for the Second Circuit in *Colonial Realty Corporation v. Bache & Co.*, 358 F.2d 178 (2nd Cir. 1966). Without elaborate discussion, that Court decided the lower court was correct in finding

> [W]here, as here, there was diversity between the plaintiff and all the general partners of the defendant, identity of citizenship between the plaintiff and a limited partner was not fatal because under the applicable New York statute a limited partner 'is not a proper party to proceedings by or against a partnership, except where the object is to enforce a limited partner's right against or liability to the partnership.' [citation omitted] In the absence of a claim of insolvency of the partnership, [citations omitted] a suit brought against a New York partnership must thus be considered to be against the general partners only and identity of citi-

zenship between a limited partner and the plaintiff does not destroy diversity. 358 F.2d at 184.[4]

Neither the United States Supreme Court nor the Court of Appeals for the Tenth Circuit has had occasion to pass on the issue, and it appears the only Court of Appeals, other than the Second and Third as noted above, to have commented directly on the question is the Fifth Circuit in *Lee v. Navarro Savings Association*, 597 F.2d 421 (5th Cir. 1979), aff'd 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980). Although the facts in *Lee* concerned whether the citizenship of beneficiary shareholders of a business trust should be considered in determining diversity, the Court addressed the same question relative to limited partners:

> The trust here is analogous to a limited partnership, and the citizenship of its beneficiary shareholders should not be counted in determining the existence of diversity of jurisdiction.

597 F.2d at 425. The Court went on to quote from an article in the University of Chicago Law Review, Comment, *Limited Partnerships and Federal Diversity Jurisdiction*, 45 U.Chi.L.Rev. 384, 407:

> Corporate shareholders and *trust beneficiaries, in contrast, have only 'equitable' interests in their respective entities.* Because limited partners do not enjoy the requisite control over the partnership, they have only an 'equitable' interest in proceedings brought by or against the partnership, and thus, like corporate shareholders and *trust beneficiaries, should not be counted for diversity purposes.* The result in *Colonial Realty*, far from expanding the diversity jurisdiction, is but an application of a principle underlying the Supreme Court's diversity jurisdiction decisions over the past 125 years.

597 F.2d at 426 (emphasis in original). Thus, the Fifth Circuit appears to have adopted the *Colonial Realty* rationale.

Other than the *Grynberg* decision discussed above, the only published opinion from a court in the Tenth Circuit dealing

---

**4.** The New York statute in question in *Colonial Realty*, N. Y. Partnership Law § 115, was iden-

tical to Section 26 of the Uniform Act. 358 F.2d at 183–4.

with the issue presented here is that in *Rocket Oil & Gas Company v. Arkla Exploration Company*, 435 F.Supp. 1303 (W.D. Okla.1977). Without a great deal of exposition, Judge Daugherty found the citizenship of a limited partnership is dependent upon the citizenship of its general partners.[5] 435 F.Supp. at 1305.

Rule 17(b) of the Federal Rules of Civil Procedure provides in pertinent part:

> In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held. . . .

In *Carlsberg Resources*, the Court expressed apprehension at the notion state law regarding capacity to sue might be used to expand federal court jurisdiction in violation of Rule 82, Fed.R.Civ.P.:

> As we view it, jurisdiction is the *most* elemental concern of the federal courts in evaluating the cases which come before them. By contrast, issues pertaining to the capacity to sue, while hardly lacking in significance, are deserving of consideration only after the jurisdiction of the federal court has been firmly established.

554 F.2d at 1260 (emphasis in original). In his dissent, Judge Hunter took issue with the majority's reasoning:

> According to the majority view, the court must examine the parties' citizenship as a preliminary issue, and only then does capacity to sue become relevant. I fail to see, though, how a court knows whose citizenship to count without first determining who the parties are. By 'parties' I mean real parties, those who have the capacity to bring suit, and in some cases where the categories diverge, those who are the real parties in interest. No one can examine citizenship *in vacuo*.

Because limited partnerships are unique, albeit popular, creatures of (uniform) state law, I do not see how we can ignore the state law that shapes them. We must use state law on members' rights and responsibilities before we can rationally decide whom to 'count' for diversity. *Cf. Miller v. Perry*, 456 F.2d 63 (4th Cir. 1972) (deciding that administrator under state law is merely a nominal plaintiff); *Bishop v. Hendricks*, 495 F.2d 289 (4th Cir.), *cert. denied*, 419 U.S. 1056, 95 S.Ct. 639, 42 L.Ed.2d 653 (1974) (same). Thus I am not troubled, as the majority purports to be, by Judge Friendly's decision in *Colonial Realty, supra*, to engraft 'capacity-to-sue rules to the traditional requirements of diversity jurisdiction.' Indeed, I can envision no other sensible way to proceed.

554 F.2d at 1264–4.

Having reviewed the discussions set forth above, the Court concludes the better reasoned, and hence, the more persuasive analysis is that of Judge Hunter. Specifically, although there can be no dispute capacity to sue and diversity jurisdiction present distinct problems, in the context of the question here presented, the practical significance of the distinction is to inject a "which came first, the chicken or the egg?" dichotomy. The Court further finds itself in the same quandary as that expressed by Judge Hunter in saying, "I fail to see, though, how a court knows whose citizenship to count without first determining who the parties are." Moreover, the Court finds unpersuasive Judge Arraj's statement in *Grynberg* regarding the "coincidental uniformity" of the state law of limited part-

---

**5.** Defendants' contention Judge Daugherty's finding in this regard was merely dicta is not well taken. Although it is true the precise issue facing the Court was whether the citizenship of all members of the class in an alleged class action must be considered in determining diversity, the Court's conclusion with respect to the citizenship of a limited partnership was a necessary predicate to its ultimate decision regarding the citizenship of the class. This is so because the nominal plaintiff in *Rocket Oil & Gas* was a limited partnership and the alleged

class consisted of the limited partners thereof. 435 F.Supp. at 1304–5. Defendants' further assertion that Judge Daugherty must have been unaware of the *Carlsberg Resources* case at the time he wrote the opinion in *Rocket Oil & Gas*, even if true, is of dubious value to this Court's consideration of the instant matter. It is worthy of mention, however, that Judge Daugherty specifically cited the *Colonial Realty* opinion as authority for the proposition advanced. *See* 435 F.Supp. at 1305.

nerships. 436 F.Supp. at 568 n.4. Were the Court today being asked to fashion a broad rule whereunder the states could limit or expand or otherwise affect federal jurisdiction, the concern expressed by Judge Arraj would be shared. That is not, however, the issue facing the Court. The fact remains indisputable that the law setting forth the parameters of the capacity to sue of limited partners is truly uniform throughout the nation, and it is in this context that the question is presented to the Court.

The Court's conclusion is buttressed by the nominally different analysis employed by the Fifth Circuit in *Navarro Savings Association.* As discussed hereinabove, the Court there was concerned with, as the Court put it, "our real-party-in-interest analysis." 597 F.2d at 427. The same considerations are present whether trust beneficiaries or limited partners are involved, for as the Court explicitly stated,

> Because limited partners do not enjoy the requisite control over the partnership, they have only an 'equitable' interest in proceedings brought by or against the partnership, and thus, like corporate shareholders and trust beneficiaries, should not be counted for diversity purposes.

597 F.2d at 426 (emphasis deleted).

The question ultimately must be determined by the modern-day realities attending limited partnerships. It is clear a limited partner stands in a legal position more closely analogous to that of a corporate shareholder than to that of a partner in a general partnership or that of a member of an unincorporated association. The limited partner, similar to a shareholder, is generally liable only to the extent of his or her capital contribution. In addition, the limit-

ed partner may be said to have even less voice than the shareholder in managing or controlling the activities of the business entity because he or she lacks voting rights. The underlying rationale of section 26 of the Uniform Limited Partnership Act, that is restricting the right of the limited partner to sue or be sued on behalf of the limited partnership, is an extension of the shareholder parallel. *See* 54 Okl.St.Ann. § 167. Ultimately, the question of whose citizenship is to be considered in determining whether diversity exists must be resolved with reference to the basic purposes of diversity jurisdiction.[6] As Judge Hunter noted in his dissent in *Carlsberg Resources,* diversity jurisdiction is designed to provide "the assurance of impartiality to out-of-state litigants", and this Court agrees with Judge Hunter's further statement that

> the policies behind the congressional grant of diversity jurisdiction are well served by allowing these limited partnerships access to federal courts when all the general partners are diverse in citizenship from all the opposing parties.

554 F.2d at 1266.

In examining the position occupied by limited partners vis-a-vis corporate shareholders and partners in a general partnership, the Court finds instructive the analysis employed by the Supreme Court in *Navarro Savings Association v. Lee,* 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980). As discussed hereinabove, that case concerned the question whether the citizenship of the beneficiaries of a business trust is to be considered in determining diversity. The Court did not address the precise question before this Court and, indeed, did not even cite the principal cases discussed herein.[7]

---

**6.** The Court notes the rather unusual posture of the instant matter insofar as the alignment of the respective parties is concerned. Messrs. Sinn and Mirsky, as general partners of Sixth, Seventh, and Eighth Geostratic Energy Drilling Programs 1980, are aligned as plaintiffs while, at the same time, as Class B limited partners of First, Second, and Third Ancor-Geostratic Drilling Partnerships 1980, are represented on the defendants' side of the lawsuit as well. In any event, since Sinn and Mirsky as limited part-

ners have no control over the actions of that limited partnership insofar as the bringing or conduct of a lawsuit is concerned, the fact that they are "on both sides" of the action does not argue for a rule different from that announced by the Court today.

**7.** The Court in *Navarro* decided the question before it on the basis of state and federal law applying exclusively to trustees and the unique legal position they occupy.

Nevertheless, the Court finds helpful the factors examined by the Supreme Court in reaching its decision on the question there presented. The Court noted the trustees in *Navarro* were empowered to hold, manage, and dispose of property for others, held legal title to the assets of the trust, and were authorized to sue and be sued in their capacity as trustees. 446 U.S. at 464, 100 S.Ct. at 1783. Of perhaps greater import to the analysis here, the Court went on to note the trust beneficiaries had no voice in the initial investment decision of the trust and had no power to control the disposition of the lawsuit or to intervene in the affairs of the trust generally except in the most extraordinary situations. *Id.* at 464–5, 100 S.Ct. at 1783–84. It is thus apparent from the Court's discussion the degree of control possessed by the beneficiaries over the affairs of the trust, and particularly, the conduct of a lawsuit, is entitled to great weight in determining whether the citizenship of the beneficiaries is to be considered in determining diversity, at least under a real-party-in-interest analysis. In this regard, it is worthy of mention limited partners generally possess even less control over the affairs of the limited partnership than did the beneficiaries in *Navarro*.[8] Having read the Court's opinion in this way, the comments of Justice Blackmun in dissent must also be noted. In a footnote, Justice Blackmun, after acknowledging the positions of the Third and Second Circuits as expressed in *Carlsberg Resources* and *Colonial Realty*, respectively, comments that he reads the Court's opinion as expressing no view on the diversity of citizenship issue where one of the parties is a limited partnership. In the text of his dissent, however, Justice Blackmun notes he is

particularly troubled by the Court's intimation that business trusts are to be treated differently from other functionally analogous business associations—partnerships, limited partnerships, joint stock companies, and the like.

446 U.S. at 475, 100 S.Ct. at 1789. Justice Blackmun concludes by stating, although he accepts the lower court's approach to determining whose citizenship to count for diversity purposes, he nevertheless feels the bondholders in *Navarro* possessed such pervasive control over the affairs of the trust that their citizenship must be considered in deciding the question. *Id.* at 476, 100 S.Ct. at 1789.

Having carefully examined the Court's opinion in *Navarro*, this Court acknowledges and agrees with Justice Blackmun's observation that the majority expressed no view on the diversity issue where one of the parties is a limited partnership. It is difficult to reconcile this view with Justice Blackmun's comment regarding the majority's "intimation that business trusts are to be treated differently from other functionally analogous business associations", limited partnerships in particular. The Court has searched the majority's opinion in vain for such an intimation of disparate treatment. The core of the Court's opinion is expressed succinctly:

They [the trustees] have legal title; they manage the assets; they control the litigation. In short, they are real parties to the controversy.

446 U.S. at 465, 100 S.Ct. at 1784. Were this standard applied to limited partnerships, it appears the general partners would stand in the position of the trustees in *Navarro*,[9] and, hence, would be considered the real parties in interest.

---

8. As the Court noted,

The shareholders may elect and remove trustees; they may terminate the trust or amend the Declaration; and they must approve any disposition of more than half of the trust estate. [citations omitted.] No other shareholder action can bind the trustees. [citations omitted.]

446 U.S. at 465 n.14, 100 S.Ct. at 1784 n.14.

9. In *Navarro*, the Court restated the general rule that when persons composing an unincorporated association sue in their collective name, those persons are the parties whose citizenship determines the diversity jurisdiction of a federal court. 446 U.S. at 461, 100 S.Ct. at 1782. Having made this statement, the Court went on to cite several cases, one of which was *Great Southern Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 456, 20 S.Ct. 690, 693, 44 L.Ed. 842 (1900). Inasmuch as that case nominally

Having dissected the *Navarro* opinions in the foregoing fashion, one further observation is required. As noted above, it is readily apparent the majority did not address the precise issue before this Court; however, the Court did affirm the decision of the Court of Appeals which did address the citizenship of limited partnerships. Nowhere in the Supreme Court's opinion is there an indication of dissatisfaction with the analysis employed by the Court of Appeals, and, in fact, the Supreme Court relied on a real-party-in-interest analysis in much the same way as did the Court of Appeals. This being so, and inasmuch as Justice Blackmun expressly accepted the approach utilized by the Court of Appeals, any analytical differences between the majority and Justice Blackmun would nevertheless appear to yield the same result, that is, only the citizenship of real parties in interest is to be considered on the issue of diversity citizenship. If this be the standard, only the citizenship of the general partners need be considered in the case at bar. The citizenship of the general partners of the drilling partnerships being completely diverse from that of the defendants herein, and the other parties being of diverse citizenship from one another, the Court has jurisdiction of the subject matter of this case pursuant to 28 U.S.C. § 1332.

IT IS THEREFORE ORDERED First Ancor-Geostratic Drilling Partnership 1980, Second Ancor-Geostratic Drilling Partnership 1980, and Third Ancor-Geostratic Drilling Partnership 1980 are hereby directed to be added as parties defendant to this action.

The Court having determined the drilling partnerships must be added as parties pursuant to Rule 19(a) of the Federal Rules of Civil Procedure, the plaintiffs are directed to cause process to be issued and served on the same within the time set forth in the Rules of this Court.

IT IS FURTHER ORDERED defendants' Motion to Dismiss is hereby overruled.

involved a "limited partnership association", it is appropriate for this Court to set forth its reasoning in concluding *Great Southern* has no applicability to the matter at bar.

As an initial matter, the entity in question in *Great Southern*, although denominated a "limited partnership association", was a fundamentally distinct business organization from the modern-day limited partnership. The limited partnership association in *Great Southern* had been organized under a Pennsylvania statute entitled "An Act Authorizing the Formation of Partnership Associations in Which the Capital Subscribed Shall Alone be Responsible for the Debts of the Association, except under Certain Circumstances." Although the text of the statute is not set forth in the opinion, it is apparent from the title that the statute authorized the establishment of an entity whose structure limited the liability of all partners to their capital contribution, but no particular partner was designated exclusively to control and direct the business operations of the entity, as is the case in the modern limited partnership. Further, as the Court noted in *Carlsberg Resources Corporation v. Cambria Savings & Loan Association,* all of the partners in *Great Southern* were of a "limited" status. 554 F.2d at 1258. Due to the lack of differing classes of partners in *Great Southern*, the Court was not faced with a situation where, as here and in *Navarro*, there existed distinct rights and powers reserved to members of such differing classes. Even the *Carlsberg Resources* court, which concluded the citizenship of a limited partnership is determined by the citizenship of all of the general and limited partners, recognized the *Great Southern* decision is not controlling of the issue here presented, noting:

> [W]e recognize that the three leading Supreme Court cases in this area [one of which was Great Southern] . . . do not squarely address the exact question posed here—in effect, whether partners of divergent status may be treated differently for purposes of an evaluation regarding diversity of citizenship.

554 F.2d at 1259. The fact of differing classes of partners takes on significance in light of the analysis employed by the Supreme Court in *Navarro*, focusing as it does, on the nature of the rights and powers reserved to each class.

In summary, it is apparent the *Great Southern* decision represents the application of the general rule regarding the citizenship of unincorporated associations to a unique creature of Pennsylvania statutory law, and does not address the citizenship of limited partnerships established under the Uniform Limited Partnership Act, as enacted by all the states.