PETROLEUM DATA SERVICES, INC., Plaintiff,

v.

FIRST CITY BANCORPORATION OF TEXAS, INC., d/b/a First City National Bank of Midland, Defendant.

No. 85–1628–K.

United States District Court, D. Kansas.

Dec. 2, 1985.

Andrea M. Ramsay, Wichita, Kan., for plaintiff.

Jeff C. Spahn, Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

Plaintiff Petroleum Data Services, Inc. (PDS) is a Kansas corporation suing in its capacity as a general partner of Petroleum Data Services, a limited partnership which entered into certain contracts with First City National Bank of Midland, Texas. PDS seeks to recover for breach of those contracts resulting from defendant's nonpayment for services rendered. Defendant First City Bancorporation, the parent company of First City National Bank of Midland, now seeks to dismiss or have transferred this case, arguing the Court lacks personal jurisdiction over the defendant and lacks subject matter jurisdiction over the action; plaintiff fails to state a claim on which relief can be granted; and venue of the parties and claims is not proper in this Court. For the reasons which follow, defendant's motion is denied. The only relief to which defendant is entitled is the amendment of plaintiff's complaint by deletion of First City Bancorporation as named defendant; henceforth, plaintiff's claims will proceed only against First City National Bank of Midland, the original contracting party.

Turning to the question of this Court's personal jurisdiction over defendant under the provisions of the Kansas long-arm statute, K.S.A. 60–308(b)(5), a two-step analysis is involved in considering jurisdictional questions. First, it must be determined whether defendant's conduct falls within the scope of any of the enumerated provisions of that statute. It must then be determined whether defendant's contacts with the State of Kansas are sufficient to meet the requirements of due process. Both the statutory and constitutional requirements must be met for this Court to assert personal jurisdiction over the defendant. *Thermal Insulation Systems v. Ark-Seal Corp.*, 508 F.Supp. 434, 436 (D.Kan.1980). When the existence of personal jurisdiction is challenged, plaintiff need only establish a prima facie case that these constitutional and statutory requirements for the assumption of personal jurisdiction are satisfied. A court may consider affidavits and documentary evidence in determining whether such a showing has been made, and plaintiff must receive the benefit of all factual doubts. *Thermal Insulation, id.* at 437.

The Kansas Supreme Court has repeatedly held the legislative intent behind K.S.A. 60–308(b) is to exert judicial jurisdiction over nonresidents to the full extent permitted by the due process clause of the Fourteenth Amendment. *Whisenant v. Whisenant*, 219 Kan. 387, 392, 548 P.2d 470 (1976). K.S.A. 60–308(b)(5) provides in part:

> Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits said person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

*     *     *     *     *     *

(5) Entering into an express or implied contract, by mail or otherwise, with a resident of this state, to be performed in whole or in part by either party in this state; ....

If this statute is to reach as far as due process permits, a broad statutory interpretation is necessary. *J.E.M. Corporation v. McClellan,* 462 F.Supp. 1246, 1250 (D.Kan. 1978). The exercise of personal jurisdiction is proper under this statute where defendant's conduct is such that it " 'purposefully avails itself' " of the privilege of acting within the forum state and invoking its laws. The act or acts must have " 'reasonably foreseeable consequences within the [forum] state.' " *Pedi Bares, Inc. v. P & C Food Markets, Inc.,* 567 F.2d 933, 937 (10th Cir.1977).

■ Turning to the facts of this case defendant, in its motion to dismiss, points out the contracts at issue were originally entered into in Texas, the negotiations occurred there, and the services required to be performed under the contract took place either in Texas or in Oklahoma City; in short, there has been no act occurring in Kansas sufficient to subject defendant to jurisdiction under the long-arm statute. While true the contracts were entered into as defendant describes and the parties' original intention may have been for performance other than in Kansas, plaintiff has shown, in the affidavit of David Webb, Vice President of PDS, that its Oklahoma City office was closed in 1984 and the services provided there were transferred to plaintiff's Wichita office. Defendant First City National Bank was informed of that change and made no objection to it. The majority of services to be performed by plaintiff under the contract were actually performed in Wichita after 1984 without any objection on the part of defendant. First City National Bank voluntarily participated in those changes by agreeing to send data for processing directly to Wichita. Further, the contract itself called for payment by defendant to be sent to plaintiff's Wichita office.

Resolving in plaintiff's favor the factual questions, as we must for purposes of defendant's motion, clearly there is more here than simple unilateral action on the part of plaintiff. In *Continental American Corp. v. Camera Controls Corp.,* 692 F.2d 1309 (10th Cir.1982), this Court exercised personal jurisdiction under K.S.A. 60–308(b)(5) solely because defendants had made 13 payments, due under a purchase contract, in Wichita. Our determination was upheld on appeal, where the Tenth Circuit said:

> These ... payments ... provide circumstantial proof that the parties agreed some performance would be rendered in the forum state. We hold, therefore, that the present events created a contract to be performed in part in Kansas, and that these events satisfy the terms of K.S.A. 60–308(b)(5).

692 F.2d at 1312. Turning to the due process analysis of whether the exercise of personal jurisdiction under those circumstances was proper, the Court of Appeals said:

> It is fundamental that the mere quantum of contacts between the forum and the defendant is not determinative of [the due process] issue. "Whether due process is satisfied," it has been said, "must depend rather on the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." ...
>
> We recognize that modern commercial transactions often involve little contact with the forum beyond that of mail and telephone communications....
>
> Nonetheless, we believe that on the present facts the "maintenance of the suit does not offend the 'traditional notions of fair play and substantial justice.' " ... [H]ere part performance of the contract, *e.g.,* partial payments of the contractual amount, did take place in Kansas.... [I]t can fairly be said that the defendant here availed itself of the privilege of business contacts with Kansas offices....

Further, by ceasing to make partial payments, defendant should certainly have foreseen the possibility of being haled into court in Kansas....

*Continental American Corp.*, 692 F.2d at 1314 (citations omitted).

In this case we have not only payments made to plaintiff's Wichita offices and the cessation of those payments by defendant, but as well defendant's additional activities of sending financial and other data to plaintiff's offices here, and the attendant communications by telephone and otherwise. Certainly, when the facts are resolved in plaintiff's favor, there is even more of a basis for exercising personal jurisdiction in this case than there was in *Continental American Corp.*, and defendant's arguments to the contrary are rejected.

Defendant next claims this Court lacks subject matter jurisdiction because plaintiff, a limited partnership, has failed to establish that the citizenship of each of its limited partners is different from that of defendant bank, and therefore the necessary diversity of citizenship under 28 U.S.C. § 1332 is not present. The issue presented is whether the citizenship of a limited partnership is determined by reference to the citizenship of its general partner alone, or whether it is determined by reference to the citizenship of both the general and limited partners.

In support of defendant's contentions it relies on *Carlsberg Resources Corp. v. Cambria Savings & Loan Assoc.*, 554 F.2d 1254 (3d Cir.1977), holding that the citizenship of limited partners must be considered in determining whether the requisite diversity exists. *See also New York State Teachers Retirement System v. Kalkus*, 764 F.2d 1015 (4th Cir.1985).

However, that is by no means a unanimous rule. In *Colonial Realty Corp. v. Bache & Co.*, 358 F.2d 178 (2nd Cir.1966), *cert. denied* 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966), the Court concluded that the citizenship of limited partners need not be considered in determining the diversity question if, under state law, a limited part-

ner is not a proper party to a suit by or against the partnership.

This split of authority has not been resolved by the Supreme Court, nor has it been addressed by the Tenth Circuit Court of Appeals. However, the *Carlsberg* decision has been subject to rather intense criticism. *See* Note, *Limited Partnerships and Federal Diversity Jurisdiction*, 45 U. of Chi.L.Rev. 384, 405, 418 (1978); Note, *Diversity Jurisdiction and Limited Partnerships*, 1977 B.Y.L.Rev. 661, 672 (1977) (suggesting that the "real parties" rule enunciated in *Colonial Realty* is more consistent both with the corpus of diversity precedents and the policy underlying the diversity requirement); Note, *Federal Jurisdiction—Diversity of Citizenship—The Citizenship of Limited Partners Must be Considered in Determining Whether Diversity Jurisdiction Exists*, 46 Geo.Wash. L.Rev. 657, 671 (1978) (noting that the practical effect of the *Carlsberg* case will be to bar limited partnerships from the federal courts, and that the absence of an impartial forum may restrict the use of a currently valuable form of business organization); Note, *Federal Courts—Diversity of Citizenship Jurisdiction—Limited Partnerships*, 16 Duq.L.Rev. 221, 234 (1977–78) (also noting the negative impact of the *Carlsberg* decision on the development of these multi-party, multi-state business entities because the parties involved often desire the availability of a federal forum); and Note, *Federal Civil Procedure—Diversity Jurisdiction—Identity of Citizenship Between Defendants and Some Limited Partners in Plaintiff Partnership Precludes Federal Jurisdiction Based on Diversity*, 27 Emory L.J. 165, 183–84 (1978) (praising *Colonial Realty* as the logical result of the Fed.R.Civ.Proc. 17(b) directive to look at state law to determine capacity to sue in suits involving neither a corporation nor an individual suing or being sued as such).

The division of authority on this issue was also reviewed by Judge Brett in *Sixth Geostratic Energy Drilling Program 1980 v. Ancor Exploration Co.*, 544 F.Supp. 297

**1026**

(N.D.Okla.1982). In that case the Court said:

> The question ultimately must be determined by the modern-day realities attending limited partnerships. It is clear a limited partner stands in a legal position more closely analogous to that of a corporate shareholder than to that of a partner in a general partnership or that of a member of an unincorporated association. The limited partner, similar to a shareholder, is generally liable only to the extent of his or her capital contribution. In addition, the limited partner may be said to have even less voice than the shareholder in managing or controlling the activites of the business entity because he or she lacks voting rights. The underlying rationale of Section 26 of the Uniform Limited Partnership Act, that is restricting the right of the limited partner to sue or be sued on behalf of the limited partnership, is an extension of the shareholder parallel.... Ultimately the question of whose citizenship is to be considered in determining whether diversity exists must be resolved with reference to the basic purposes of diversity jurisdiction. As Judge Hunter noted in his dissent in *Carlsberg Resources*, diversity jurisdiction is designed to provide "the assurance of impartiality to out-of-state litigants", and this Court agrees with Judge Hunter's further statement that
>
>> the policies behind the congressional grant of diversity are well served by allowing these limited partnerships access to federal courts when all the general partners are diverse in citizenship from all the opposing parties.

*Ancor*, 544 F.Supp. at 303 (citations omitted).

■ After fully reviewing the foregoing authorities, this Court is persuaded *Colonial Realty* is a better-reasoned decision, and therefore concludes plaintiff PDS need not prove citizenship of its limited partners is different from that of defendant to establish diversity jurisdiction. PDS is a limited partnership whose general partner is PDS, Inc., a corporation organized under the laws of the State of Kansas. Defendant First City National Bank is a corporation organized under, and doing business in, Texas. Consistent with *Colonial Realty*, adequate diversity exists in this case to vest the Court with subject matter jurisdiction.

Parenthetically, the Court would add that even under defendant's contention that the citizenship of plaintiff's limited partners needs to be taken into account to establish diversity, plaintiff has in fact established that none of its limited partners resides or does business in Texas. Thus, even were the *Carlsberg* rationale declared to be the law of the case, diversity jurisdiction would exist.

■ Defendant next complains that because plaintiff named First City Bancorporation of Texas as primary defendant rather than First City National Bank of Midland, the party actually entering the contracts at issue, the complaint should be dismissed for failing to state a claim upon which relief can be granted. First City Bancorporation is the parent holding company of, and does business as, First City National Bank. Plaintiff properly responds that under F.R.Civ.P. 21 misjoinder of parties is not ground for dismissal, but that the Court may order the addition or deletion of any party on such terms as are just. At oral argument on defendant's motion, the parties agreed First City Bancorporation was not a necessary party to this action. Plaintiff's complaint will be amended by deletion of that party and all claims will henceforth proceed against First City National Bank of Midland, Texas.

■ Defendant also challenges venue in this Court on the grounds plaintiff has failed to establish the residence of the individual partners of PDS. That argument is based on the premise plaintiff must allege the citizenship of each limited partner to establish proper venue. Consistent with the Court's previous ruling that the controlling citizenship for purposes of this case is only that of the general partner, however, venue in this case is likewise de-

termined on that basis. Here, that citizenship is Kansas, and there is accordingly no difficulty with venue in this Court.

 Lastly, defendant requests that for considerations of convenience this Court exercise its discretion to transfer the case to Texas, where witnesses and evidence are located. Plaintiff cogently responds there are numerous witnesses and evidence located here in Kansas, and in this regard the "inconvenience" appears roughly equal between the parties. Under these circumstances, the Court declines to exercise its discretion to transfer the case, consistent with the principle that plaintiff's choice of forum should not be disturbed absent compelling reasons.

IT IS THEREFORE ORDERED this 2 day of December, 1985, that plaintiff's complaint be amended by the deletion of First City Bancorporation of Texas, Inc. as a named defendant, and that defendant's motion to dismiss is otherwise denied in its entirety.